Carroll Wayne WATTS, Appellant,

v.

The STATE of Texas, State.

No. 2–84–166–CR.

Court of Appeals of Texas,
Fort Worth.

Nov. 29, 1984.

George Harwood, Amarillo, Ralph H. Brock, Lubbock, for appellant.

David M. McCoy, Dist. Atty., Childress, for the State.

Before HUGHES, BURDOCK and HILL, JJ.

## OPINION

HILL, Justice.

Appellant, Carroll Wayne Watts, was convicted of attempted capital murder and sentenced to twenty years in the Texas Department of Corrections.

On appeal, he argues that there was insufficient evidence to support his conviction, and that the State made improper jury arguments during both the guilt/innocence and punishment phases of the trial. He further complains that the trial court's

charge on intoxication and insanity caused the jury to reject his insanity defense, and that the rejection was against the great weight and preponderance of the evidence.

We affirm.

Appellant's grounds of error numbers one, two and seven urge that there was no evidence or insufficient evidence to support the conviction.

On October 3, 1981, about 8:50 p.m., Truett Owens, the son of a deputy sheriff, saw appellant standing next to his pickup truck about a block from the county jail, holding a pistol and staring at the jail. Appellant's son was being held in the jail on juvenile charges. Owens drove to the jail and reported what he'd seen to the dispatcher on duty. As Owens drove away from the jail, appellant started to follow him in his pickup. Appellant chased Owens at speeds up to 80 m.p.h. When Owens stopped, appellant pointed a pistol at him and threatened to blow his brains out. Owens escaped and reported the second incident.

Deputy Sheriff Jean Denton heard the radio traffic about appellant and reported for duty early. He and Constable Wilson Porter were given appellant's name and the number and description of his pickup truck. They left the jail in a patrol car, which was clearly marked, and stopped for gas at the Texaco station. The station attendant told them that appellant had driven by and fired a shot at the attendant.

Meanwhile, appellant went to the VFW, ordered a beer, and talked to Earl Janes, a local farmer. He asked Janes, "Have you seen any cops? I just shot one and I'm looking for another one to shoot." Janes testified that Watts had a "goofy" look but seemed fairly normal and spoke calmly. Appellant did not appear to be drunk, and left a few minutes later with his can of beer.

Officers Denton and Porter spotted appellant in his truck at the corner of 8th and Dallas Streets. Denton called in and was told that appellant had also fired a shot at the Conoco gas station. Denton activated the car's flashing lights and started to follow appellant down Dallas Street, toward 7th Street. Appellant sped up, turned right on 7th, and right again onto Highway 83, running a stop sign. The officers followed. Appellant threw a beer can out of his truck.

As both vehicles picked up speed on Highway 83, the patrol car was about 50 feet behind appellant's pickup. As the two vehicles crossed 8th Street, an object hit the patrol car. The same thing happened at about 15th Street. Both officers initially thought the objects were pieces of gravel slung up from the road, but as the patrol car caught up to appellant's truck, Porter said to Denton, "The man is shooting at us." The officers identified appellant through the open driver's window of the pickup. Denton, the driver, radioed in and was told to stop the pickup. At this point, as the two vehicles reached 110 m.p.h., both officers heard three or four gunshots. Denton told Porter to blow the pickup's tires out with a shotgun, which Porter proceeded to do. Appellant's pickup flew off the road and ended up on its side. Appellant was not injured, although he was admitted into the hospital for observation for a couple of days.

After the chase was over, the officers discovered a hole in the front grill of the patrol car and a crease along the front hood of the car, holes that were not there before the chase began. A half-full whiskey bottle was found in the pickup, and a .357 Colt Magnum with six spent shells in it was found fifteen feet from the pickup. Appellant had .38 ammunition on his person. Marshall Peters, a man who lived along Highway 83, also heard the four gunshots.

■ In reviewing the sufficiency of the evidence in a circumstantial evidence case, we must view the evidence in the light most favorable to the jury's verdict and consider whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Houston v. State*, 663 S.W.2d 455, 456 (Tex.Crim.App.1984); *Wilson v. State*, 654

S.W.2d 465, 471 (Tex.Crim.App.1983, opinion on rehearing).

■ Appellant was charged with knowingly and intentionally attempting to cause the death of a person or persons he knew to be peace officers acting in the lawful discharge of their duties by knowingly and intentionally shooting at them with a gun.

Appellant does not dispute that he knew Denton and Porter were peace officers acting in the lawful discharge of their duties. He does argue that there is insufficient evidence that he shot at the patrol car.

Both Denton and Porter twice heard something strike the patrol car. Porter told Denton that the man was shooting at them. Both officers heard four gunshots, as did bystander Peters. The patrol car was damaged in two places, damage that could have been caused by bullets. Appellant had a pistol and ammunition with him in the pickup and, in his own words, was looking for a cop to shoot. We find that the evidence was sufficient for the jury to find the essential elements of the crime beyond a reasonable doubt.

■ However, a conviction cannot be sustained if the evidence leaves any reasonable doubt as to the guilt of the accused. *Jackson v. Virginia*, 443 U.S. 307, 317–18, 99 S.Ct. 2781, 2788, 61 L.Ed.2d 560 (1979). Thus, it follows that a conviction based on circumstantial evidence cannot be sustained if the circumstances do not exclude every other reasonable hypothesis except that of the guilt of the defendant. *Johnson v. State*, 673 S.W.2d 190, 195 (Tex.Crim.App. 1984); *Wilson*, 654 S.W.2d at 471.

■ Appellant urges that the State failed to exclude the reasonable hypothesis that the patrol car was damaged by gravel, not bullets. He points to the testimony of the two police officers. Each initially thought that it was gravel striking the car, and neither actually saw appellant holding a pistol or firing it at the officers.

These portions of the officers' testimony do show that the State's case was circumstantial. They do not show, however, that gravel was a reasonable alternative. The police officers realized almost immediately that appellant was shooting at them. The fact that neither saw split-second muzzle flashes while engaged in a sudden high-speed pursuit in and out of light cast by streetlights does not mean that there were no muzzle flashes. It means only that the officers did not see any. Appellant offered no evidence that gravel could cause the type of damage that the patrol car sustained. We therefore hold that the jury could find that no other reasonable hypothesis existed besides appellant's guilt. We overrule grounds of error one, two and seven.

Appellant's ground of error number three alleges improper jury argument by the State.

■ The purpose of closing argument is to facilitate the jury in properly analyzing the evidence presented at trial so that it may arrive at a just and reasonable conclusion based on the evidence alone and not on any fact not admitted in evidence. *Campbell v. State*, 610 S.W.2d 754, 756 (Tex. Crim.App.1980). To be permissible, jury argument must fall within one of the following four general areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; (4) plea for law enforcement. *Darden v. State*, 629 S.W.2d 46, 52 (Tex.Crim.App.1982); *Alejandro v. State*, 493 S.W.2d 230, 231–32 (Tex.Crim. App.1973).

Appellant claims that the prosecutor, Mr. McCoy, exceeded the permissible bounds of jury argument during the punishment phase when he said:

[MR. McCOY:]

Now, the punishment range varies with the crime. We talked about that way back when we're talking about five on the low end to ninety nine or life on the top end. What's average? About fifty. Isn't this crime at least an average first degree felony? I'm not going to tell you all or demand anything before I or any peace officer, any citizen in this community would be satisfied. I'm only going

to tell what to give but I say when you measure it you have got to say that it is at least an average crime.

Defense counsel then objected. In response to that objection, Mr. McCoy told the court:

MR. MCCOY: Nowhere did I ask or suggest what time they should give. I said an average time span is between ninety nine and fifty and was not this an average crime at least? Nowhere did I suggest any number of years.

Defense objections were overruled, as was a motion for mistrial, thus preserving this question for us on appeal.

■■■ Appellant argues that the prosecutor was, in effect, telling the jury to assess appellant 50 years imprisonment, and refers us to *Irving v. State*, 573 S.W.2d 5 (Tex.Crim.App.1978), and *Haynes v. State*, 663 S.W.2d 118 (Tex.App.—Houston [1st Dist.] 1983, pet. ref'd). In *Irving*, the prosecutor asked the jury to rely on "my expertise in these matters," and in *Haynes*, the prosecutor implied that he had personal knowledge of other crimes or convictions not in evidence before the jury. Neither case supports appellant's contention here. Mr. McCoy did not refer to himself as an expert, and did not imply personal knowledge of other crimes or convictions. The question before us was raised in *Jackson v. State*, 654 S.W.2d 749, 751 (Tex.App.—Houston [14th Dist.] 1983, no pet.) but was not answered. We hold that there was no error. As long as a prosecutor does not say he has some kind of specialized knowledge, it is perfectly proper for him to offer the jury his analysis of the case, *Johnson v. State*, 629 S.W.2d 99, 102 (Tex.App.—El Paso 1981, no pet.), to remind the jury of the entire range of punishment, *Rich v. State*, 510 S.W.2d 596, 597 (Tex.Crim.App.1974), and generally to contrast the case before the jury to other cases, *Tatum v. State*, 649 S.W.2d 139, 141 (Tex.App.—Fort Worth 1983, pet. ref'd). We overrule appellant's ground of error number three.

Appellant's grounds of error numbers four, five and six involve appellant's defense of insanity.

■■■ In ground of error number four, appellant urges us to find that the State's attorney made an improper jury argument during the guilt/innocence phase. The prosecutor said:

(Mr. McCoy) Ladies and gentlemen, if you believe beyond a reasonable doubt, that that Defendant is guilty with what he is charged with and don't find him guilty, what in essence you are saying is in Collingsworth County you get a free one before we do anything with you.

The defense objected, but the objection was overruled. The prosecutor continued:

(Mr. McCoy) What you are really saying is in Collingsworth County there's a bag limit of one peace officer before we do anything with you: if you believe he is guilty and don't find him guilty.

Appellant reads this as an attempt by the State to tell the jury to ignore appellant's insanity defense. We disagree.

The prosecutor began his jury argument with a discussion of appellant's insanity defense, which was based on diagnoses of temporal lobe epilepsy and dementia. He then changed the subject, and praised the peace officers involved in the case, followed by the remarks to which appellant objects. After appellant's objections were overruled, the prosecutor concluded by telling the jury how important a link they were in the American system of justice.

■■■ As appellant points out, it is improper for a prosecutor to beg jurors to "do something" about a man who kills another and then "claim[s] exemption from punishment because he is an epileptic, . . ." *Maynard v. State*, 106 Tex.Crim. 558, 293 S.W. 1104, 1106 (Tex.Crim.App.1927). Similarly, as in *Livingston v. State*, 531 S.W.2d 821, 823 (Tex.Crim.App.1976), it is improper for the prosecutor to say that the accused "may very well go out and kill somebody" if not convicted. Here, prosecutor McCoy in no way connected his remarks about appellant's defense of insanity

to his remarks about "you get a free one", and he did not tell the jury that appellant would try again to kill someone.

Also, prosecutorial warnings about "one free attempt to murder", "one free ride", and "one free killing" have been held not in error. *Bacon v. State*, 500 S.W.2d 512, 514 (Tex.Crim.App.1973); *Smith v. State*, 457 S.W.2d 58, 60 (Tex.Crim.App.1970); *Monroe v. State*, 644 S.W.2d 540, 545 (Tex.App. —Dallas 1982, discretionary review granted April 6, 1983). We overrule appellant's ground of error number four.

■ Under ground of error number five, appellant challenges the instruction on intoxication given to the jury:

> The burden of proof, as to insanity, is upon the Defendant to prove insanity by a preponderance of the evidence.

> By the term "preponderance of the evidence" is meant the greater weight and degree of the credible evidence in the case.

> Temporary insanity caused by voluntary intoxication does not constitute a defense to the commission of crime. The term "intoxication" means disturbance of mental and physical capacity resulting from the introduction of any substances into the body.

The giving of this instruction was error, according to appellant, for two reasons. First, TEX.PENAL CODE ANN. sec. 8.04 (Vernon 1974), upon which this instruction is based, refers to "intoxication", not mere "use". Since, according to appellant, there was no evidence of his being intoxicated, to the point of being what is commonly referred to as "drunk", the inclusion of the instruction is error. Also, appellant continues, the reference to temporary insanity caused by voluntary intoxication was in error because the issues of voluntary intoxication and temporary insanity were never raised at trial. The instruction in effect told the jury to ignore his insanity defense based on temporal lobe epilepsy and dementia if they felt the use of alcohol was a cause of that insanity.

Section 8.04 of the Penal Code contains its own definition of "intoxicated", "disturbance of mental or physical capacity resulting from the introduction of any substance into the body." This special definition is probably closer to "use" than "drunk," but the trial court used the exact language of the statute and was not in error.

■ The evidence shows that on the night of October 3, 1981, appellant drank a beer at the VFW, threw a beer can out the window of his pickup, and had a half-full whiskey bottle with him in the cab of the pickup. He did introduce some alcohol into his body. According to one of appellant's own medical experts, epileptic seizures can be triggered by the use of alcohol. The jury could find that appellant was temporarily insane because of his use of alcohol, and so the trial court was correct to include the instruction on temporary insanity caused by voluntary intoxication.

Appellant's reliance on *Hart v. State*, 537 S.W.2d 21, 24 (Tex.Crim.App.1976) and *Rodriguez v. State*, 513 S.W.2d 594 (Tex. Crim.App.1974) is misplaced. *Hart* does not stand for the proposition that the defendant must be "drunk" in order to be "intoxicated", and *Hart* itself notes that *Rodriguez* is not controlling. We overrule appellant's ground of error number five.

Appellant argues, in his ground of error number six, that the jury's rejection of his insanity plea was against the great weight and preponderance of the evidence.

Most of the witnesses were asked about appellant's behavior before, during or after the events of October 3.

Owens, the deputy sheriff's son, testified that appellant recognized him and called him by name.

Janes, the farmer in the VFW, testified that appellant recognized him. Appellant "barged in" and had a "mad" or "goofy" look about him and was "wild-eyed". Although appellant appeared to be "tense", he seemed fairly normal and spoke calmly about crops for about three to five minutes before he left.

Denton, the deputy sheriff, testified that he had heard talk that appellant was a "nut".

Kenneth Maxwell, sheriff, testified that appellant had a reputation for being "overbearing" and "a bully, but not a nut". Appellant had pointed pistols at people and threatened them before, but had no convictions. There had been some trouble between appellant and a deputy sheriff a couple of weeks before the events of October 3. On the night of the 3rd and during appellant's time in the jail awaiting trial, nothing indicated that he was insane. Two or three days after October 3, some papers were found at appellant's home that talked about drug smuggling and violent acts aimed at the sheriff and a deputy. Once, in the hospital immediately after October 3, appellant said that someone was trying to poison him.

Alta Watts, appellant's mother, testified that appellant told her in September that "some guys" tried to push him off the highway. He was thereafter "nervous", and thought that some killers were after him. He drew up a will and stayed up all night one night watching the vacant house next door. At no time, though, did he have seizures or pass out, and nothing in his papers mentioned any killers.

Carter Holcomb, M.D., appellant's family physician, saw appellant soon after the high-speed chase ended. Appellant was coherent, did not need restraints and appeared sane. He did pull his I.V. out two days later and said someone was trying to poison him. He sent appellant for psychiatric treatment in 1976 and to Rusk in 1977 for evaluation after family complaints of episodes of "agitation".

Mary Lou Mulch, appellant's cousin, repeated a story appellant told her in the hospital about being a federal agent with drug smugglers after him.

Marvin Leon Morris, clinical psychologist, testified that appellant suffered from organic brain dysfunction (dementia) and temporal lobe epilepsy. He said the former was probably the result of illness or injury and would not improve, though it could be controlled by medication and therapy. The epilepsy, he went on, is characterized by attacks of extremely bizarre behavior, and requires drugs and moderation of lifestyle, including abstention from alcohol, to control.

Jack Randolph Tomlinson, psychiatrist and physician, confirmed the diagnosis of Morris, his partner, and added that appellant had some minimal atrophy of the brain. He did agree, however, that it was unlikely appellant would have had only two "seizures" or problems in a five-year period, and agreed that drinking or anger could bring on a seizure. Most seizures last one and one-half to two minutes.

In rebuttal, the State presented three witnesses, Sheriff Maxwell, jailer N.E. Childers, who saw appellant every day for four and one-half months until the trial, and the ambulance driver who took appellant to the hospital after the chase. All testified that appellant seemed normal, not insane or suffering from any kind of seizure.

Appellant argues that we, as a Court of Appeals, do not need to find here that the appellant was insane as a matter of law, merely that the jury verdict that appellant was not insane was contrary to the great weight and preponderance of the evidence. He relies on *Schuessler v. State*, 647 S.W.2d 742, 748–49 (Tex.App.—El Paso 1983, discretionary review granted June 22, 1983).

Those testifying that appellant was insane were his mother, his cousin and two medical experts who talked to appellant and tested him for a few hours several months after the incidents of October 3. Several police officers, a local farmer and appellant's family physician, all of whom spoke with appellant and observed him on October 3, said that he was sane. In *Schuessler*, the only witnesses as to Schuessler's sanity were jailers who saw him months after the incident in question and after he had received months of treatment. The jury verdict was not against the great weight and preponderance of the evi-

dence. We overrule ground of error number six.

Having overruled all of appellant's grounds of error, we affirm his conviction for attempted capital murder.