James Lewis HART, Appellant,

v.

The STATE of Texas, Appellee.

No. 51510.

Court of Criminal Appeals of Texas.

May 19, 1976.

---

**22**

Robert G. Chappell, Abilene, for appellant.

Ed Paynter, Dist. Atty., Abilene, Jim D. Vollers, State's Atty., and David S. McAngus, Asst. State's Atty., Austin, for the State.

OPINION

DAVIS, Commissioner.

Appeal is taken from a conviction for robbery. Punishment was assessed by the jury at two years.

The indictment alleged that the offense occurred on or about February 2, 1975, and the record reflects that trial was in July, 1975.

Barbara Gibson identified appellant as the man who entered the Colonial Food Store on Grape Street in Abilene shortly before midnight on February 2, 1975, and announced, "This is sort of like a hold up." Appellant approached Gibson's fiance who was waiting for her to close the store and said, "You move or say a word and I will blow your head off." Gibson did not see a gun but stated that appellant "had both hands in his pockets, and this one, you know, you could tell something was pointed out." At appellant's request, Gibson removed what was later determined to be "around a hundred" dollars from a cash register, placed it in a paper bag, and gave same to appellant.

Appellant in his sole ground of error contends that the court erred in refusing to grant his requested charge at the punishment stage of the trial that intoxication may be considered to mitigate punishment (appellant made a motion for probation) if, as a result of the intoxication, "the defendant either did not know his conduct was wrong, or was incapable of conforming his conduct to the requirements of the law he allegedly violated."

Appellant urges that under the evidence he was entitled to have the jury instructed in accordance with V.T.C.A. Penal Code, Sections 8.04 and 8.01.

Section 8.04, supra, "Intoxication," provides:

"(a) Voluntary intoxication does not constitute a defense to the commission of crime.

(b) Evidence of temporary insanity caused by intoxication may be intro-

duced by the actor in mitigation of the penalty attached to the offense for which he is being tried.

(c) When temporary insanity is relied upon as a defense and the evidence tends to show that such insanity was caused by intoxication, the court shall charge the jury in accordance with the provisions of this section.

(d) For purposes of this section 'intoxication' means disturbance of mental or physical capacity resulting from the introduction of any substance into the body."

Section 8.01, supra, "Insanity," provides:

"(a) It is an affirmative defense to prosecution that, at the time of the conduct charged, the actor, as a result of mental disease or defect, either did not know that his conduct was wrong or was incapable of conforming his conduct to the requirements of the law he allegedly violated.

(b) The term 'mental disease or defect' does not include an abnormality manifested only by repeated criminal or otherwise antisocial conduct."

The testimony of Bob Borst, who had assisted appellant in moving on the day in question, was to the effect that appellant had drunk a substantial quantity of beer throughout the day and that Borst had visited a number of clubs that evening with appellant where appellant's drinking continued. Prior to appellant carrying Borst home "after ten or ten thirty," appellant drank a mixture of "whiskey and cokes." About twelve o'clock the same night appellant returned to Borst's house at which time Borst described appellant as being "pretty pickalated."

Appellant directs our attention to the following, which occurred on cross-examination of Borst by appellant.

"Q. At this time, you said that, 'I think that when James [appellant] gets to drinking a lot of times, he doesn't know what he is doing.' Would that be a fair statement of your opinion now?

"A. Yeah."

On re-direct, Borst was asked to state what he meant when he testified that appellant didn't know what he was doing when he was drinking. The record reflects that Borst testified that appellant would not remember what he had told him over five minutes, "he will be driving on the wrong side of the road and won't pay no attention," and "he is just likely to do anything."

Appellant further directs our attention to the testimony of appellant that he remembers entering the store where the robbery occurred but that he did not recall doing the things he was accused of doing on the occasion in question.

Appellant relies on *Rodriguez v. State,* Tex.Cr.App., 513 S.W.2d 594, and *Perez v. State,* 146 Tex.Cr.R. 241, 172 S.W.2d 314. Appellant recognizes that these cases arose under the former code, Art. 36, V.A.P.C.[1] but urges that these decisions are applicable under Section 8.04, supra.

In *Rodriguez,* it appeared to be undisputed that defendant was intoxicated; however, the evidence was found insufficient to warrant a charge under Art. 36, supra. In *Rodriguez,* this Court noted that *Perez v. State,* supra, accurately described the evi-

---

1. Art. 36, V.A.P.C., as amended by Acts 1969, 61st Leg., p. 1656, ch. 521, Sec. 1, effective September 1, 1969, provided:

"Neither intoxication nor temporary insanity of mind produced by the voluntary recent use of ardent spirits, intoxicating liquor, narcotics, or dangerous drugs, or a combination thereof, shall constitute any excuse for the commission of crime. Evidence of temporary insanity produced, however, by such use of ardent spirits, intoxicating liquor, narcot- ics, or dangerous drugs, or a combination thereof, may be introduced by the defendant in mitigation of the penalty attached to the offense for which he is being tried.

"When temporary insanity is relied upon as a defense and the evidence tends to show that such insanity was brought about by immoderate use of intoxicating liquor, narcotics, or dangerous drugs, or by a combination thereof, the judge shall charge the jury in accordance with the provisions of this Article."

dence necessary to warrant a charge. In *Perez,* the Court stated that the testimony of the defendant's wife relative to temporary insanity "is very meager indeed, and barely, if at all, calls for an instruction thereon." In *Perez,* it was undisputed that the defendant was drunk prior to the events which resulted in the ultimate conviction of defendant for aggravated assault. The defendant's wife testified, "I think this drinking on my husband's part has had the effect of interfering with his ability to tell right from wrong; he never gets in any trouble unless he is drinking like that. I think he is mentally affected only when he is drinking like that, he gets like that in trouble and they pick him up."

■ Under the former code, a defendant must have been intoxicated to the point of losing his ability to distinguish between right and wrong in order to avail himself of the mitigation of penalty provision of Art. 36, supra. See Art. 35, V.A.P.C.; *Rodriguez v. State,* supra.

■ Reading Sections 8.04 and 8.01, supra, of the present code together, a defendant, to avail himself of the mitigation provision of Section 8.04, supra, must, as the result of intoxication, (1) "not know his conduct was wrong" or (2) "was incapable of conforming his conduct to the requirements of the law he violated." [2]

First it should be noted that it appears undisputed that appellant in the instant case was intoxicated as was the case in *Rodriguez* and *Perez.* Section 8.04, supra, like former code Art. 36, V.A.P.C., provides that "voluntary intoxication does not constitute a defense to the commission of crime."

While *Rodriguez* and *Perez* are no longer controlling,[3] we find the decisions in those cases helpful. In *Perez,* the Court found the testimony of the defendant's wife that

the defendant's drinking interfered with his ability to tell right from wrong and that defendant was mentally affected when he was drinking ". . . very meager indeed, and barely, if at all, calls for an instruction thereon." We find the testimony of Borst that in his opinion ". . . that when appellant gets to drinking a lot of times, he doesn't know what he is doing" to be even more meager than the testimony of the defendant's wife in *Perez.* It clearly does not raise the issue that appellant did not "know his conduct was wrong on the occasion in question" or that appellant "was incapable of conforming his conduct to the requirements of the law he violated." Further, we do not find the testimony of appellant and Borst relative to appellant being forgetful and being unable to remember the events on the night in question to raise the issue of temporary insanity. In *Guyton v. State,* Tex.Cr.App., 472 S.W.2d 130, a case tried under the former code, complaint was made on appeal of the failure of the trial court to submit to the jury the issue of insanity as a defense. This Court quoted from 31 Tex.Jur.2d, Insane and Incompetent Persons, Sec. 4, p. 422, where it was stated:

". . . general unsoundness of mind or incapacity to understand a particular transaction is not established by the fact that a person may be eccentric, or forgetful, or given to delusion."

We find the foregoing quotation to be no less applicable under the new code.

■ We conclude that the evidence does not raise the issue of temporary insanity caused by intoxication and reject appellant's contention that the court erred in failing to grant his requested charge.

The judgment is affirmed.

Opinion approved by the Court.

2. For a jury charge under Section 8.04, supra, see Morrison & Blackwell, New Texas Penal Code Forms, Sec. C–804, "Intoxication."

3. While Art. 36, V.A.P.C. spoke in terms of insanity produced by "voluntary recent use of ardent spirits, intoxicating liquor, narcotics, or dangerous drugs, or a combination thereof," another change in the new code is the provision that intoxication can result "from the introduction of any substance into the body."