**Edwin Gene ARNOLD, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 378-85.**

Court of Criminal Appeals of Texas, En Banc.

Dec. 16, 1987.

Charles F. Baird, court appointed on appeal only, Catherine Greene Burnett, of counsel on appeal, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., and Winston E. Cochran, Jr. and Rusty Hardin, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

ONION, Presiding Judge.

Appellant was convicted of murder. V.T. C.A., Penal Code, § 19.02. Punishment was assessed by the jury at life imprisonment and a fine of $10,000.

On appeal the appellant, inter alia, complained that the "trial court erred in over-ruling appellant's objection to the charge for its failure to instruct the jury on the law of voluntary intoxication as mitigation." Appellant pointed out that at the guilt stage of the trial the court had charged:

"Voluntary intoxication does not constitute a defense to the commission of crime. Evidence of temporary insanity caused by intoxication may be considered by the jury in mitigation of the penalty. Intoxication means disturbance of mental or physical capacity resulting from the introduction of any substance into the body." See V.T.C.A., Penal Code, § 8.04.

Appellant then insisted that the court erred in refusing to include a charge on voluntary intoxication at the penalty stage of the trial despite his objection. He claimed the error was "particularly harmful" because of the charge at the guilt stage of the trial on "temporary insanity."

The Court of Appeals affirmed the conviction, rejecting all appellant's points (nee grounds) of error. *Arnold v. State*, 686 S.W.2d 291 (Tex.App.–Houston [14th] 1985).

In overruling appellant's second contention the Court of Appeals observed that the objection to the charge came before the commencement of the penalty stage of the trial and before any evidence was offered. It concluded that while the evidence at the guilt stage of the trial reflected appellant was intoxicated it did not raise the issue of temporary insanity caused by intoxication, and that this was the only evidence before the trial court at the time of objection. The Court of Appeals further concluded that the testimony of the appellant's mother "might" have raised the issue, but appellant made no further objection to the court's charge.

In his petition for discretionary review appellant urged, inter alia, that the "court below erred in holding that error in the punishment charge had been waived: alternatively the error was of a fundamental nature under the recent decision in *Almanza v. State*." We granted the petition to determine the correctness of the decision.

During the voir dire examination the jury panel was informed that voluntary intoxication was not a defense, but that temporary insanity caused by intoxication could be considered in mitigation of punishment. Prospective jurors were interrogated about their feelings about drinking and intoxication, and some were excused for cause. The prosecutor, defense counsel and the court all participated in this part of the voir dire examination.

The morning after the conclusion of the evidence at the guilt stage of the trial, the State stated it had no objections to the charge, and the appellant only asked that the State elect "as to whether it is a gun or knife." After being overruled and upon inquiry by the court appellant's counsel stated, "That will be all."

The record then reflects:

"THE COURT: * * * It is now my duty and obligation to read you the Court's charge.

"(The Court begins to read the Judge's Charge to the Jury.)

"THE COURT: Would you retire the jury?

"(The jury leaves the Courtroom.)

"MR. HARDIN (Prosecutor): I would like one item on the record as far as the Charge is concerned."

"The State had requested that on voluntary intoxication only the first sentence be in the Charge, that it is no defense at this stage of the trial. I am informed by Mr. Hause he is willing to state on the record—the State wouldn't oppose—he wants the whole first paragraph of voluntary intoxication which refers to temporary insanity, which has not been raised at this stage of the trial.

"MR. HAUSE (Defense Counsel): I want the whole first paragraph.

"THE COURT: That has already been read to the jury. So I will move along."

The charge given on voluntary intoxication and temporary insanity and read to the jury has been set out earlier in the opinion. It covered V.T.C.A., Penal Code, § 8.04(a), (b) and (d).

After the jury reached the verdict of guilty and prior to the commencement of the penalty stage of the trial, the court overruled the appellant's motion to prohibit introduction of prior convictions. After presentation and discussion, appellant's counsel then had the record reflect that the appellant had decided not to testify at the penalty stage after consultation with counsel. Appellant then acknowledged to the court upon its inquiry that he did not wish a charge on his eligibility for probation. Thereafter the record reflects:

"MR. HAUSE: For the purpose of the record, the Defendant objects to the Court's Charge, in that it does not contain a voluntary intoxication charge.

"THE COURT: All right, your request will be denied."

Whether the proposed charge at the penalty stage of the trial had already been given to counsel at this juncture is not clear from the record. After appellant's mother testified at the penalty stage of the trial the record reflects:

"THE COURT: That concludes the evidence, members of the jury. I will now read you the Court's Charge at the Punishment stage of the trial.

"(Court's Charge read)."

As the Court of Appeals observed, appellant made no objection at this time to the court's charge, and we note that no objection was made to any action of the trial court. On appeal appellant relies upon his objection to the charge prior to the commencement of the penalty stage. Appellant does not complain that he was called upon or forced to object when he did or that he was prevented from objecting subsequently. It is well settled, absent fundamental error, that failure to object to the charge or failure to object to the charge in the manner required by statute waives the error, if any.

Evidence can and often does affect the content of the court's charge at either stage of a bifurcated trial. The Court of Appeals concluded the evidence at the time of appellant's objection had not raised the issue of temporary insanity. Since that court held the objection was premature,

and assuming that the objection met the specificity test of Article 36.14, V.A.C.C.P., we briefly examine the evidence. First, of course, we must examine the law regarding submission of a charge on temporary insanity.

■ An accused is entitled to an instruction on every defensive or mitigating issue raised by the evidence. *Williamson v. State*, 672 S.W.2d 484 (Tex.Cr.App.1984); *Moon v. State*, 607 S.W.2d 569 (Tex.Cr. App.1980); *Garcia v. State*, 605 S.W.2d 565 (Tex.Cr.App.1980); *Warren v. State*, 565 S.W.2d 931 (Tex.Cr.App.1978). This is true regardless of whether the evidence is strong or weak, unimpeached or contradicted and regardless of whatever the trial judge may think about the credibility of the evidence. *Warren v. State*, supra; *Shaw v. State*, 510 S.W.2d 926 (Tex.Cr.App.1974); *Perez v. State*, 172 S.W.2d 314 (Tex.Cr. App.1943).

In connection with the instant case it is observed that V.T.C.A., Penal Code, § 8.04, provides:

"(a) Voluntary intoxication does not constitute a defense to the commission of crime.

"(b) Evidence of temporary insanity caused by intoxication may be introduced by the actor in mitigation of the penalty attached to the offense for which he is being tried.

"(c) When temporary insanity is relied upon as a defense and the evidence tends to show that such insanity was caused by intoxication, the court shall charge the jury in accordance with the provisions of this section.

"(d) For purposes of this section 'intoxication' means disturbance of mental or physical capacity resulting from the introduction of any substance into the body."

At the time of appellant's trial (August 23–26, 1983), insanity was defined by V.T. C.A., Penal Code, § 8.01,[1] as follows:

"(a) It is an affirmative defense to prosecution that, at the time of the conduct charged, the actor, as a result of mental disease or defect, either did not know that his conduct was wrong or was incapable of conforming his conduct to the requirements of the law he allegedly violated.

"(b) The term 'mental disease or defect' does not include an abnormality manifested only by repeated criminal or otherwise antisocial conduct."

Thus a proper charge under said § 8.01 and § 8.04 at the time of appellant's trial would have read:

"You are instructed that under our law neither intoxication nor temporary insanity of mind caused by intoxication shall constitute any defense to the commission of crime. Evidence of temporary insanity caused by intoxication should be considered in mitigation of the penalty attached to the offense.

"By the term 'intoxication' as used herein is meant disturbance of mental or physical capacity resulting from the introduction of any substance into the body.

*"By the term 'insanity' as used herein, is meant that as a result of intoxication the defendant either did not know that his conduct was wrong or he was incapable of conforming his conduct to the requirements of the law he allegedly violated.*

"Now if you find from the evidence that the defendant, AB, at the time of the commission of the offense for which he is on trial, if you find from the evidence beyond a reasonable doubt that he did commit such offense, was laboring under temporary insanity as above defined, produced by voluntary intoxication, then you may take such temporary insanity into consideration in mitigation of the penalty which you attach to the offense, if any, if you find him guilty." McClung's Jury Charges for Texas Criminal Practice (Revised Ed.

---

1. In 1983 § 8.01(a) was amended to read:
"(a) It is an affirmative defense to prosecution that, at the time of the conduct charged, the actor, as a result of severe mental disease or defect, did not know that his conduct was wrong."

1983), p. 293. (Emphasis supplied.) *Hart v. State,* 537 S.W.2d 21 (Tex.Cr. App.1976).

The proper place for an instruction on temporary insanity induced by voluntary intoxication is in the court's charge at the penalty stage of the trial. *Rodriguez v. State,* 513 S.W.2d 594 (Tex.Cr.App.1974). However, the giving of such jury charge at the guilt stage is not reversible error. *Williams v. State,* 567 S.W.2d 507 (Tex.Cr. App.1978). See also *Madden v. State,* 628 S.W.2d 161 (Tex.App.–Eastland 1982, P.D. R. refused).

It is clear from reading the two statutes together that for a defendant to benefit from the provisions of § 8.04 he must do more than merely present evidence of intoxication or even gross intoxication. *Hart v. State,* supra; *Nethery v. State,* 692 S.W.2d 686 (Tex.Cr.App.1985). In *Still v. State,* 709 S.W.2d 658, 661 (Tex.Cr.App. 1986), this Court wrote:

"In *Hart v. State,* 537 S.W.2d 21 (Tex. Cr.App.1976) we held that § 8.04 and § 8.01 should be read together and that for a defendant to avail himself of the mitigation provision of § 8.04, he must, as a result of intoxication, (a) ' "not know his conduct was wrong" or (2) was incapable of conforming his conduct to the requirements of the law he violated.' *Hart,* supra, at 24.

\*   \*   \*   \*   \*   \*

"Even if we assume appellant was intoxicated, there is no evidence he did not know his conduct was wrong. The evidence instead shows that appellant fully appreciated the risk in his handling of the gun and the terrible result that followed the shooting. Nor is there evidence that appellant was incapable of conforming his conduct to the requirements of the law he violated. Again, the evidence shows appellant was aware of what he was doing. Nowhere does any evidence reflect any incapacity to conform his conduct to the law due to intoxication.

"The Court of Appeals was correct in holding that the evidence did not raise the issue of temporary insanity caused by voluntary intoxication."

Evidence showing the defendant was intoxicated and nothing more does not justify submission of an issue on temporary insanity, and refusal to submit such charge in mitigation of punishment is not error. *Sawyers v. State,* 724 S.W.2d 24 (Tex.Cr. App.1986). See also *Schenck v. State,* 624 S.W.2d 757, 758 (Tex.App.–Ft. Worth 1981).

In the instant case the evidence shows that appellant Arnold, 38, a former school teacher, was the night bartender and manager of the Cue and Cushion Club in Houston on February 16, 1983. He had been so employed for about three weeks. The club served beer and wine and had pool tables. Carl Hoover, the deceased, a regular patron of the club, had been hired as the janitor or night cleanup man. Appellant's duties included closing the club at 2 a.m. and staying until about 3 a.m. to lock up the club after the cleaning man had finished.

When the police arrived about 7 a.m. on February 16th, they found the body of Hoover in a vacant lot near the club. The body was shirtless and a knife was sticking in the chest. There were pools of blood leading to the club's door. Some of the blood was mixed with water as if someone had tried to wash it away. The driver of an ambulance, which had arrived before the police, told the police the man who waved down the ambulance had gone into the club. The police saw appellant through the club's window mopping up something and tried unsuccessfully to get appellant to open the door. The appellant disappeared into a back room and after an interval of time reappeared and opened the door for the police. The appellant and floor of the club were covered with blood. Appellant was arrested. Later in the morning the deceased's blood-soaked shirt and a .38 cal. revolver and a derringer were found in appellant's pickup truck parked across the street from the club. Both weapons belonged to the appellant. Five of the six shells found in the club or on appellant's person were shown to have been fired from appellant's .38 cal. weapon.

Deputy Chief Medical Examiner, Dr. Aurelio Espinola, performed the autopsy on the deceased Hoover. He testified that a cutting wound to Hoover's neck cut the carotid artery and jugular vein, causing massive bleeding, and was inflicted while Hoover was still alive; that this wound and two gunshot wounds, one to the back and one to the abdomen, were concurrent causes of death. He reported that the deceased had been stabbed eleven times in the body after death. Certain abrasions on the body were consistent with dragging of the body.

Joseph Antonucci, general manager of the club, had known appellant for the three weeks appellant had been employed at the club. He testified that at 5:30 a.m. on February 16th appellant telephoned him at home and related that when he was getting ready to leave the club he had found Hoover dead outside the club with a knife in his chest. Antonucci told appellant to call the police, lock up and leave. When asked why he was still there at 5:30 a.m. appellant replied he had been shooting pool, watching television and relaxing. He testified that appellant "sounded normal, calm. He wasn't excited ... that I can remember." Antonucci then called Jim Merkle, the club owner and reported the conversation. About 6:15 to 6:30 a.m. appellant called Antonucci again, telling him the police were there banging on the door and asked what he should do. Antonucci told him to let the police into the club. Appellant sounded a "little excited," but Antonucci could not say that appellant sounded intoxicated.

Merkle, the club owner, testified Antonucci called him around 3:30 or 4 a.m. about appellant's call, and that around 5:30 or 6 a.m. appellant had personally telephoned and told him the police were at the door and asked what he should do. Merkle told him to admit the police. Appellant then "mumbled something kind of incoherently." He thought appellant sounded "real intoxicated or drunk or something."

Henrietta Sue Burris, appellant's girlfriend, testified she lived with appellant from August 1979 until October 1981, and

still saw him on weekends thereafter; that appellant had taught ninth grade math at Lanier Junior High School and later taught at Galena Park High School. She related that she received a telephone call from appellant at 2 a.m. on February 16, 1983, in which he told her he had decided that she should have his income tax refund check because he was going to Phoenix, Arizona. She told him to close up the club and go home because he was drunk. Around 4 a.m. appellant called her again and told her he needed her help to lift something. When she asked what, he replied, "I need you to help me lift a body. * * * I think I killed someone. * * * I am going to get in trouble." Burris told appellant he was drunk, to go home, that he didn't kill anyone, that if he couldn't drive to lie down in the pool hall. She thought he was "out of it." At 5:30 a.m. she related that appellant called her again pleading with her to help. Again she told him to go home and not to call her again. She hung up the phone.

Burris testified that she had known the appellant for four years, that he had a bad drinking problem for two years and had also used paint thinner to sniff, that he had gone to A.A. and group therapy. He had stayed sober for several months at a time, but he always slipped back. She related that he sometimes hallucinated when he was drunk, that she didn't believe he was hallucinating at the time of the 2 a.m. call, but was at the time of the 4 a.m. call because he thought he had killed someone. She believed at the time of all three calls, however, he was intoxicated.

Officer C.V. Hudson, one of the first officers on the scene, testified that when appellant finally let the officers into the club that appellant appeared intoxicated, "Almost scared of us," "confused," and when placed in a patrol car he was "quiet, very quiet and confused."

Detective M.E. Doyle observed appellant at the scene at the time of his arrest and related that appellant appeared intoxicated and smelled strongly of alcohol "mainly that from beer."

The appellant called no witnesses or offered no other evidence. He rested with

the State at the conclusion of the guilt stage of the trial.

At the penalty stage of the trial Mrs. Ella Richardson, appellant's mother, was a defense witness. She testified appellant was born when she was 15 years of age, that at 16 years of age she had divorced appellant's father, then remarried him and divorced him again; that appellant had mostly lived with her mother until he was 16 years of age, that after he returned to live with her he ran away from home and was gone for three years. At 19 years of age he returned and finished high school and began college; that he dropped out and left for California, and when he returned at age 22, he was on alcohol and drugs and that she had him committed to the Terrell State Hospital for approximately six months. Mrs. Richardson further related that upon his release appellant finished college and went to Houston to teach school; that he taught five to seven years; that there were periods when he didn't drink and there were periods when he did, and that he tried going to "AA" and "some kind of psychiatrist." Appellant's mother testified that during 1981–1982, when he called her she could tell by his voice whether he was sober, on alcohol, or paint thinner or glue, for he had a different voice and was "three (3) different people," depending on his condition. When using paint thinner he was usually incoherent and could hardly talk. She had urged him to seek treatment.

She had seen appellant at Thanksgiving 1982, after he had served a year's sentence in the Harris County jail for aggravated assault, and that at that time he was sober, "not drinking a drop," and that a few months later the instant offense occurred.

There was no showing that Mrs. Richardson had seen the appellant since the Thanksgiving date or knew any of the circumstances surrounding the instant offense.

■ As earlier noted, in order to raise the issue of temporary insanity at the time of appellant's trial there must be a showing that he was temporarily insane as a result of intoxication in that he (1) did not know his conduct was wrong or (2) was incapable of conforming his conduct to the requirements of the law he violated at the time of the alleged offense.

■ The time of death was not stated by the medical examiner. There was no showing of the types of intoxicants that appellant may have used or the time at which they were consumed, either before or after the offense, although one officer thought appellant smelled like beer. Antonucci testified when appellant called him at 5:30 a.m. his voice sounded normal and calm, that at 6:30 a.m. his voice sounded excited but he couldn't tell over the telephone whether appellant was intoxicated. Merkle thought that when appellant called and said the police were at the club appellant sounded intoxicated and he mumbled something incoherently. Officer Hudson thought at 7 a.m. appellant appeared intoxicated and "quiet and confused" and Detective Doyle thought appellant was intoxicated. Appellant's girlfriend thought he was drunk when he called all three times, 2 a.m., 4 a.m. and 5:30 a.m. At 4 a.m. she thought he was hallucinating when he asked for help to lift a body because he thought he killed someone. This, of course, was no hallucination but a correct perception of the facts by appellant. The testimony of appellant's mother at the penalty stage of the trial did not show any knowledge of appellant's condition at the time in question.

Even if it be conceded that appellant was under the influence of alcohol, or alcohol and drugs, etc., the evidence was not sufficient to raise the issue of temporary insanity under the law in effect at the time. The mere fact that appellant was intoxicated was not enough. This is true whether the evidence at the guilt stage is considered alone or with the evidence at the penalty stage. Since the issue was not raised the trial court did not err in failing to submit the issue regardless of when the objection to the charge was made. Trial courts are cautioned, however, that if proposed charges are submitted to counsel for whatever reason prior to the conclusion of the evidence at either stage of the bifurcated

trial, the better practice would dictate that after the evidence is concluded the record should be made to reflect what has transpired and counsel be given a reasonable time to examine the charge and make objections thereto or to present special requested charges, or to waive the opportunity. See Articles 36.14 and 36.15, V.A.C.C.P.

The judgment of the Court of Appeals is affirmed.

CLINTON, Judge, dissenting.

We granted review of the decision in *Arnold v. State*, 686 S.W.2d 291, at 293 (Tex.App.—Houston [14th] 1985), to examine propriety of reasons given for overruling the second ground of error. The opinion of this Court mentions them at pages 1–2, but does not directly address those reasons, so I shall.

In finding that an objection to the charge on punishment was premature and thereby overruling the second ground of error, *id.*, at 293, the Court of Appeals blinks reality of what occurred under the aegis of the trial court.

The fact of the matter is that at the request of the State supplemented by a suggestion from appellant the trial court included in its charge on the issue of guilt an instruction in substantially the language of V.T.C.A. Penal Code, § 8.04(a), (b) and (d). After the jury returned its verdict the judge of the trial court convened a hearing outside the presence of the jury to determine in advance certain matters pertaining to the punishment phase, and from the record it is obvious that those matters *vis a vis* a prepared charge on punishment had already been reviewed by and discussed with the judge.

The first was appellant's motion to prohibit introduction of prior convictions. Once those issues were resolved, counsel for appellant "put on the record" the fact

that after full explanation appellant freely and voluntarily made the decision not to testify. Then the judge directly addressed appellant on the subject of submitting to the jury a request for probation; upon ascertaining that matter also had been explored, the judge remarked, "It is my understanding you do not wish to have a Charge to the Jury for the jury to consider your eligibility for probation and probate any sentence they may give you," and appellant personally answered affirmatively. At that point his attorney stated, "For the purpose of the record, the Defendant objects to the Court's Charge, in that it does not contain a voluntary intoxication charge." The court responded, "[Y]our request will be denied." The hearing thus concluded, the court directed that the jury be brought in.

The State promptly offered documentary evidence of prior convictions, there were stipulations as to identity, the prosecutor released his witnesses and interpreted the exhibits for the jury, and then announced, "[A]t this time the State would re-offer all the evidence introduced in the case in chief and rest." Whereupon counsel called the mother of appellant who testified to facts the court of appeals opined "might have been sufficient to support the requested charge," *Arnold v. State*, supra, at 393. Then the defense rested and the State closed, and the court informed the jury, "That concludes the evidence, members of the jury. I will now read you the Court's charge at the Punishment stage of the trial." And without giving counsel an opportunity to object immediately proceeded to do so.*

Manifestly, the judge of the trial court did not follow the traditional practice of first taking evidence on punishment, then retiring the jury, presenting a proposed charge to the parties, allowing a reasonable time for them to examine the same and

---

* Article 37.07, § 3(b), V.A.C.C.P., provides that when presentation of evidence on punishment has been concluded the court "shall give such written instructions as may be necessary and the order of procedure and the rules governing the conduct of the trial shall be the same as are applicable on the issue of guilt or innocence."

Article 36.14, *Id.*, requires, *"Before said charge is read to the jury,* the defendant or his counsel shall have a reasonable time to examine the same and he shall present his objections thereto ..., distinctly specifying each ground of objection." (All emphasis is mine throughout unless otherwise noted.)

providing an opportunity for counsel for defendant to make objections. However, the judge and counsel should not be faulted for not following that practice since in fact the judge did literally comply with both Article 37.07, § 3(b) and the requirement stated in Article 36.14. From the record of the preliminary hearing it is clear that *before the charge of the court was read to the jury* the judge had not only presented a proposed charge on punishment to the parties but also had discussed with them matters that were not to be included, heard counsel's objection for failure include an instruction on voluntary intoxication and denied his "request."

Accordingly, whether the Court of Appeals correctly analyzed the procedural posture of things in light of governing law, rather than notions of tradition and practice, before overruling the second ground of error is a live and important question of state law that ought to be resolved by this Court. Because the Court does not pursue that question to an answer, but takes a different route to affirm the judgment below, I respectfully dissent.