Rudy FRIAS, Appellant,

v.

The STATE of Texas, State.

No. 2–88–180–CR.

Court of Appeals of Texas,
Fort Worth.

Aug. 31, 1989.

Max Blankenship, Fort Worth, Tex., for appellant.

Tim Curry, Crim. Dist. Atty. and Lisa C. McMinn, Asst., Fort Worth, Tex., for State.

Before WEAVER, C.J. and HILL and FARRIS, JJ.

## OPINION

HILL, Justice.

Rudy Frias appeals from his conviction by a jury of the offense of aggravated sexual assault. The jury assessed his punishment at twenty-five years in the Texas Department of Corrections. In five points of error, Frias urges that the trial court erred in refusing, at the punishment stage of the trial, his requested charge on voluntary intoxication, and that the court erred in overruling his objections that arguments of the prosecutor: (1) commented on his failure to testify; (2) were unsworn testimony of the prosecutor; (3) were personal opinion of the prosecutor; and (4) were unsupported by the record.

We affirm, because we find that although the trial court erred by not submitting a charge on voluntary intoxication at the punishment stage of the trial, since there was some testimony that, as a result of intoxication, Frias did not know that what he was doing was wrong, the trial court's failure was harmless beyond a reasonable doubt. We further find that certain arguments of the prosecutor did not constitute a reference to Frias' failure to testify, did not constitute unsworn testimony, and that another argument was supported by the evidence.

Frias attacked N.V. at her home while her husband was away. He forcibly took her to an abandoned apartment, where he sexually assaulted her. When Frias took her home, N.V. ran to her husband and to her father, both of whom had been searching for her, and told them that Frias had raped her.

In point of error number one, Frias contends that the trial court erred in refusing his properly requested charge on voluntary intoxication at the time of the offense. At the punishment stage of the trial, Frias testified that he was under the influence of "some kind of a drug" at the time of the assault. He said that at the time of the assault he had been drinking and doing cocaine, and that the drinking and cocaine use affected him a great deal. He said that the cocaine made things seem unreal, that he did not know what he was doing, and that he did not realize what was happening. He did not specifically testify that he did not know what he was doing was wrong. The trial court overruled Frias' requested instruction on voluntary intoxication and overruled his objection to the failure to include such an instruction.

Sections 8.04(a) and 8.04(b) of the Texas Penal Code provide that voluntary intoxication is not a defense to crime but that evidence of such intoxication may be introduced by the actor in mitigation of the punishment. Section 8.04(c) of the Texas Penal Code provides that when temporary insanity is relied on as a defense and the

evidence tends to show that the insanity was caused by intoxication, the court is to charge the jury in accordance with the provisions of section 8.04. Section 8.01(a) of the penal code provides that it is an affirmative defense to prosecution that, at the time of the conduct charged, the actor, as a result of severe mental disease or defect, did not know that his conduct was wrong.

 Sections 8.01(a) and 8.04, considered together, require that a defendant, in order to be entitled to a charge under section 8.04, must show that, as a result of intoxication, he did not know that his conduct was wrong. *See Hart v. State,* 537 S.W.2d 21, 24 (Tex.Crim.App.1976). We find that Frias' testimony that the cocaine made things seem unreal, that he did not know what he was doing, and that he did not realize what was happening was sufficient to entitle him to an instruction on voluntary intoxication at the punishment stage of his trial. Although he did not specifically testify that he did not know that what he was doing was wrong, if he were so intoxicated that the situation seemed unreal, and if he were so intoxicated that he did not know what he was doing or realize what was happening, it follows that he was so intoxicated as to not know that his conduct was wrong because he could not have known that his conduct was wrong if he did not know what his conduct was. We therefore find this to be some testimony raising the issue of temporary insanity caused by voluntary intoxication.

The State relies on the cases of *Hart,* 537 S.W.2d at 21 and *Madden v. State,* 628 S.W.2d 161, 162 (Tex.App.—Eastland 1982, pet. ref'd). We find those cases to be distinguishable. In *Hart,* the defendant testified that he did not remember what he did, and a friend testified that when the defendant "gets to drinking a lot of times, he doesn't know what he is doing." *Hart,* 537 S.W.2d at 23. The court held that such testimony did not raise the issue that the defendant did not know his conduct was wrong on the occasion in question. *Id.* at 24. The court also said that the testimony that the defendant did not remember what he did was insufficient to require the in-

struction. *Id.* We believe the court reached that conclusion because the friend's testimony did not establish that Hart did not know that his conduct was wrong or did not know what he was doing on the particular occasion for which he was being tried. The friend's testimony, if believed, only established that Hart did not know what he was doing on certain occasions. The friend did not express an opinion as to whether Hart knew what he was doing on the occasion in question, if in fact he would have been able to express such an opinion. Hart's testimony that he could not remember what he did is not the same as testimony that he did not know what he was doing at the time he did it, or that he did not know that what he was doing was wrong. In *Madden,* as in *Hart,* the defendant could not remember everything he did. *Madden,* 628 S.W.2d at 162. The court of appeals, relying on *Hart,* held that evidence that the defendant did not remember what happened was insufficient to require the voluntary intoxication charge. *Id.* In this case, as we have noted, Frias testified that because of his drug use things seemed unreal, that he did not know what he was doing on the occasion in question, and that he did not realize what was happening. We believe that such testimony could support a reasonable conclusion that, as a result of intoxication, he did not know that his conduct was wrong on the occasion in question.

 The State urges that even if it were error to omit the requested charge, that the error was harmless. We agree. The jury received evidence of Frias' intoxication. The court instructed them that they could consider all of the evidence in reaching a determination as to Frias' punishment. Frias' attorney argued to the jury without objection and without contradiction that the law allowed them to consider Frias' intoxication as mitigation of his punishment. The jury assessed punishment at twenty-five years out of a possible maximum punishment of ninety-nine years or life. We find beyond a reasonable doubt that the trial court's failure to give an instruction on the jury's right to consider Frias' intoxication in mitigation of his punishment was

harmless. We overrule point of error number one.

■ Frias urges in point of error number two that the trial court erred in overruling his objection to the prosecutor's argument that, "If you believe what she said was true, and I submit there is no reason to doubt it, then I ask that you return a verdict of guilty." He also complains of the prosecutor's argument that, "There is no reason to question what she said to you." In both cases, Frias' counsel objected that the comments were an improper allusion to his client's failure to testify. The trial court overruled his objections.

We must determine whether the language used was manifestly intended or was of such character that the jury would naturally and necessarily consider it to be a comment on the failure of the accused to testify. *See Banks v. State,* 643 S.W.2d 129, 134 (Tex.Crim.App.1982), *cert. denied,* 464 U.S. 904, 104 S.Ct. 259, 78 L.Ed.2d 244 (1983). The comment of the prosecutor could have been a reference to the fact that N.V.'s testimony was in harmony with other evidence in the record. We do not consider that such language was manifestly intended or was of such character that the jury would naturally and necessarily consider it to be a comment on the failure of the accused to testify.

Frias relies on the cases of *Watson v. State,* 171 Tex.Crim. 526, 352 S.W.2d 120 (1961); *Griggs v. State,* 166 Tex.Crim. 56, 311 S.W.2d 418 (1958); and *Barrera v. State,* 165 Tex.Crim. 387, 307 S.W.2d 948 (1957). In all those cases, the prosecutor's argument directly alluded to the fact that the State's testimony was either not refuted or was uncontradicted, at a time when the only contradictory testimony could have come from the defendant. In this case, the prosecutor's argument did not directly refer to the fact that N.V.'s testimony was uncontradicted or unrefuted, and such a comment was not necessarily intended by the language used. We overrule point of error number two.

■ Frias argues in point of error number three that the prosecutor's argument that, "The reason that she told you what happened, the good and the bad and ugly and the humiliating, was because that's what happened to her. And what else can she do?" was unsworn testimony of the prosecutor that expressed his opinion of N.V.'s testimony.

Just prior to the argument Frias complains of, the prosecutor argued:

I would suggest to you, Ladies and Gentlemen, the Defense attorney asked you to look for motives. What motives does N.V. have to come and tell you of the events that occurred there? If she was going to make up something, why would she put anything in there about him apologizing or at first deciding that, well, he really didn't want to be identified and he had goofed up and he had failed in his assault? Why did she admit the things that don't make him look quite so bad? If she is going to make it up, why would she admit the things that occurred there that night?

We find that in the context in which the argument was made that it was an analysis of the evidence and was a reasonable deduction therefrom. *See Sikes v. State,* 500 S.W.2d 650, 652 (Tex.Crim.App.1973).

Frias relies on the case of *Puckett v. State,* 168 Tex.Crim. 615, 330 S.W.2d 465 (1959). In *Puckett,* the prosecutor argued, "Ladies and Gentlemen of the jury, the police officers that testified in this case are sworn to tell the truth and I am telling you that they are telling the truth." *Id.* The case was reversed, the court of criminal appeals holding that argument was an effort on the prosecutor's part to bolster the police officer's credibility with his unsworn testimony. *Id.* The opinion in *Puckett* does not set forth the context of the prosecutor's argument, leading us to conclude that the court found the context to be immaterial to its decision in that case. We are of the opinion that if the context in that case showed, as it does here, that the argument was an analysis of the evidence and was a reasonable deduction therefrom, the court would have included a discussion of the context in the opinion and reached the

same result that it did in *Sikes*. We overrule point of error number three.

 Frias contends in point of error number four that the prosecutor's argument that, "I don't think probation is appropriate and I don't think that you think probation is appropriate," was an improper statement of the prosecutor's personal opinion. The prosecutor's statement followed his discussion of the case and the factual reasons why probation was not appropriate. We therefore find, in regard to this argument also, that in the context in which the argument was made that it was an analysis of the evidence and was a reasonable deduction therefrom. *See Sikes*, 500 S.W.2d at 652.

Frias relies on the authority of *Baldwin v. State*, 499 S.W.2d 7 (Tex.Crim.App.1973). In that case the complaint regarding the prosecutor's argument that, "I think that he's guilty," was not presented to the court on appeal. *Id.* at 9. The court, without mentioning the context in which the argument was made, merely admonished the prosecutor not to make such an improper argument when the case was being tried again. *Id.* The court was not called upon to consider the context of the argument to see if it constituted reversible error. Again, we believe that had the matter been presented to the court for review, and had the context showed that the argument was an analysis of the evidence and was a reasonable deduction therefrom, the court would have reached the same result as it did in *Sikes*. We overrule point of error number four.

 In point of error number five, Frias asserts that the trial court erred in overruling his objection to the following argument of the prosecutor, an argument made at the punishment stage of the trial:

> But he wants you to put him right back out on the street where his cousin will be, where Sara will be; Sara, the pretty cousin that he wanted to know where she is, is she still as pretty?

Frias objected on the basis that there was no evidence that Frias would commit an offense against Sara.

While Frias was attempting to penetrate his victim, he started telling her that her "ass" was tight and her breasts firm, not like his wife's. He then asked her about her cousin, Sara, wanting to know what she had been doing, where she was living, and was she still as beautiful as she was. We find that Frias' statements concerning Sara, in view of the context in which the statements were made, supported the argument of the prosecutor. We overrule point of error number five.

The judgment is affirmed.