

NUMBER 13-12-00664-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

**ANDREW LANZ,**                                                                          **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                                **Appellee.**

**On appeal from the 211th District Court
of Denton County, Texas.**

# MEMORANDUM OPINION

**Before Justices Garza, Benavides, and Perkes
Memorandum Opinion by Justice Garza**

By four issues, appellant Andrew Lanz challenges his fifty-five and twenty-eight year sentences for two counts of aggravated assault of a public servant. *See* TEX. PENAL CODE ANN. § 22.02(b)(2) (West 2011). We affirm as modified.

# I. BACKGROUND[1]

Appellant was living with his parents in Denton, Texas while awaiting sentencing on federal charges in Tennessee. In September of 2011, appellant began drinking during the end of his shift at the Mt. Fuji restaurant where he worked. After the restaurant closed, appellant continued drinking alcohol at a bar called Vitty's. After leaving Vitty's, appellant was pulled over by a police officer on suspicion of driving while intoxicated. Appellant refused to exit his vehicle, drove away from the traffic stop, and led the police on a car chase at speeds between fifteen and thirty-five miles per hour. Appellant eventually stopped at a parking lot, exited his car, and began firing a pistol towards the police officers. The police officers returned fire, and appellant was shot three times in the legs. The same police officers immediately transported appellant to the hospital. Appellant testified at trial that he did not remember anything between the time he left Vitty's and the time he awoke handcuffed to a bed in the emergency room.

Appellant pleaded guilty to two counts of aggravated assault of a public servant. *See id.* Appellant elected for a jury to assess punishment. At trial, appellant pursued a theory of temporary insanity and submitted a proposed jury charge that included an instruction that the jury could take intoxication-induced temporary insanity into consideration when assessing punishment. *See id.* § 8.04(b) (West 2011). Appellant objected when the trial court did not include the proposed instruction in the charge, and the court expressly overruled appellant's objection. The jury assessed punishment at imprisonment for fifty-five years on the first count and imprisonment for twenty-eight

---

[1] This case is before this Court on transfer from the Second Court of Appeals in Fort Worth pursuant to a docket-equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2005).

years on the second count, and $240 in court costs. The court ordered the sentences on each count to run concurrently. Appellant filed a motion for new trial that was overruled by operation of law. *See* TEX. R. APP. P. 21.8. This appeal followed.

## II. DISCUSSION

### A. Temporary Insanity Jury Instruction

In his first two issues, which we address as one, appellant argues that the trial court erred in failing to instruct the jury on temporary insanity as a mitigating factor in assessing punishment.

#### 1. Applicable Law

A defendant "is entitled to an instruction on every defensive or mitigating issue raised by the evidence." *Arnold v. State*, 742 S.W.2d 10, 13 (Tex. Crim. App. 1987); *see* TEX. CODE CRIM. PROC. ANN. art. 36.14 (West 2007) (providing that the trial court shall instruct the jury on the "law applicable to the case"). "This is true regardless of whether the evidence is strong or weak, unimpeached or contradicted and regardless of whatever the trial judge might think about the credibility of the evidence." *Arnold*, 742 S.W.2d at 13. An issue is raised "if there is some evidence, from any source, on each element of the defense that, if believed by the jury, would support a rational inference that the element is true." *See Shaw v. State*, 243 S.W.3d 647, 657 (Tex. Crim. App. 2007).

In Texas, voluntary intoxication does not constitute a defense to the commission of a crime, but evidence of temporary insanity caused by intoxication can be introduced to mitigate the punishment imposed for the crime. *See* TEX. PENAL CODE ANN. § 8.04 (West 2011). "A court must submit a mitigating instruction on temporary insanity by

3

intoxication only if the evidence tends to show the intoxication caused temporary insanity in the defendant." *Meine v. State*, 356 S.W.3d 605, 611 (Tex. App.—Corpus Christi 2011, pet. ref'd). In order to raise the issue of temporary insanity by intoxication, the evidence must tend to show both that appellant was intoxicated and that "[appellant]'s voluntary intoxication caused him (1) not to know his conduct was wrong or (2) it caused him to be incapable of conforming his conduct to the requirements of the law he violated." *Cordova v. State*, 733 S.W.2d 175, 190 (Tex. Crim. App. 1987) (en banc); *see* TEX. PENAL CODE ANN. §§ 8.01(a), 8.04. Evidence of intoxication, "even gross intoxication," is not sufficient to require a mitigating instruction. *Arnold*, 742 S.W.2d at 14; *see Cordova*, 733 S.W.2d at 190. Furthermore, "it is well settled that lack of memory is not the same thing as intoxication; thus, evidence showing loss of memory is not sufficient to require an instruction on temporary insanity." *Reyna v. State,* 11 S.W.3d 401, 403 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd) (citing *Hart v. State*, 537 S.W.2d 21, 23–24 (Tex. Crim. App. 1976)); *see also Howard v. State*, 239 S.W.3d 359, 365 (Tex. App.—San Antonio 2007, pet. ref'd.).

### 2. Discussion

Appellant discusses the evidence supporting the two variations of temporary insanity separately, and we shall do the same. Appellant first argues that the trial court erred in denying his request for a mitigation instruction because the evidence raised the issue that his intoxication rendered him unable to comply with the law. *See Cordova*, 733 S.W.2d at 190.

Appellant asserts that the following evidence raised a fact issue as to whether he could not obey the law as a result of his intoxication: (1) he testified that he would never

4

have fled from the police or fired a gun at them if he had been "in his right state of mind"; (2) Lainie Snyder, one of appellant's coworkers who was drinking with him the night of the shooting, testified that she believed that the act of killing another person is not "in" appellant's character; and (3) Snyder testified that she had never seen appellant as intoxicated as he was that night. Appellant reasons that Snyder's testimony, combined with his own, shows a causal connection between appellant's intoxication and his actions: that he was so intoxicated that he was not "in his right state of mind" when he shot at the police officers.

Appellant argues that his case is analogous to *Frias v. State*, 775 S.W.2d 871, 874 (Tex. App.—Fort Worth 1989, no pet.). The defendant in that case testified that he was under the influence of alcohol and cocaine, that the use of the two intoxicants together "affected him a great deal," and that, as a result, "he did not know what he was doing" or "realize what was happening." *Id.* at 872. The Fort Worth Court of Appeals concluded that this testimony warranted a mitigation instruction even though appellant never specifically testified that he was temporarily insane. The court reasoned that if appellant was so intoxicated that the situation seemed unreal and that "he did not know what he was doing or realize what was happening, it follows that he was so intoxicated as to not know that the conduct was wrong because he could not have known that his conduct was wrong if he did not know what his conduct was." *Id.* at 873. The court nevertheless concluded that the trial court's failure to include a mitigation instruction was harmless because Frias' trial counsel argued to the jury without objection that they could consider Frias' intoxication in assessing his punishment. *Id.* at 874.

5

*Frias* is distinguishable from the present case because Frias presented evidence about his mental state at the time he committed the offenses.[2] Frias testified that he voluntarily ingested alcohol and cocaine and described the effect that it had on him at the time. The court held that Frias was entitled to an instruction because if he was not aware of his actions, it followed that he would not be able to appreciate that his actions were wrong. *Id.* at 873. In this case, appellant never testified about his mental state or the effect alcohol had on his mental state on the night in question. Appellant expressly stated on cross-examination that he has no memory whatsoever of the period of time between leaving Vitty's and waking up in the hospital. He also said that, "I do not know what was going through my head" after leaving Vitty's and that "I cannot answer what I was thinking at the time." Appellant did not testify that while consuming alcohol to excess at Vitty's that he became violent or otherwise began acting out of control. After viewing the tape of the chase and shooting, appellant testified that he thought that "a crazy person" was driving his car, but appellant's after-the-fact opinion of the events depicted on the tape is not a statement about his mental state at the time. *See Easley v. State*, 978 S.W.2d 244, 253 (Tex. App.—Texarkana 1998, pet. ref'd) (observing that a defendant cannot give evidence of her mental state without recall of committing the crimes).

Furthermore, none of the other witnesses testified that appellant was temporarily insane at the time as a result of consuming alcohol, nor did their testimony require that inference as in *Frias*. Snyder did testify that she had never seen appellant as

---

[2] We note that the First Court of Appeals has observed that the Fort Worth court's conclusion that Frias's testimony required a mitigation instruction was probably dicta because it was unnecessary to that court's disposition of the case. *Reyna v. State,* 11 S.W.3d 401, 403 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd).

intoxicated as he was the night he was arrested, but nothing in Snyder's testimony suggests that appellant shot at the police officers because his intoxication made him unable to obey the law. Similarly, the other witnesses[3] testified that assaulting police officers was out of character for appellant, but none of them suggested that appellant was so intoxicated that he lost the capacity to obey the law. All of the witnesses who testified that they had consumed alcohol with appellant or observed him while intoxicated actually testified that appellant did not become violent or erratic after consuming alcohol. Snyder testified that appellant did not become angry, frustrated, or mad in the hours before the shooting and that he was the "same guy" she knew. Matthew Bryant, a coworker of appellant, testified that when appellant consumed alcohol, he became "happy-go-lucky" and was never violent. Bryant, who also had been drinking with appellant at Vitty's on the night in question, testified that appellant was not violent or erratic by the time Bryant left the bar. Hannah Trimmer, a friend of appellant who testified for the State, said that appellant "was always very sweet" and "like a teddy bear almost," even when drinking to excess. Even combining testimony that appellant was unusually intoxicated that night with the testimony of appellant and others that assaulting police officers is grossly out of character for appellant, we find no evidence that raises an issue that appellant was temporarily insane as a result of his intoxication. *See Ex parte Martinez*, 195 S.W.3d 713, 723 (Tex. Crim. App. 2006) (holding that an appellant who consumed rohypnol, alcohol, marihuana and cocaine before committing a murder, and who witnesses testified appeared to be "incoherent,"

---

[3] Appellant's father, brother, sister, sister-in-law, and next-door neighbor all testified for appellant as character witnesses.

7

"high," "tripping," "freaking out," and "looked crazy" after committing the murders, was not entitled to an instruction on temporary insanity by intoxication).

Appellant next argues that, even if we do not agree that he was unable to obey the law at the time of the offenses, the evidence at least raises the possibility that as a result of his intoxication, he did not know that his actions were wrong. *See Cordova*, 733 S.W.2d at 190. Appellant relies on the following evidence: (1) appellant testified that he did not "know what was going through my head" at the time; (2) appellant testified that he thought after viewing the recording that "it looks like and sounds like to me, there was a — a crazy man behind the wheel"; (3) appellant testified that he has always known that it is wrong to shoot at police officers; (4) appellant's father testified that he was "shocked" that appellant had fired a gun at someone and that "he never thought" appellant would do that. Appellant argues that the fair inference from this evidence is that he was temporarily insane as a result of his consumption of alcohol. Appellant does not point us to any evidence that he was so intoxicated he did not know his conduct was wrong other than the fact that he was highly intoxicated at the time he committed the two aggravated assaults. The mere fact that a defendant committed an offense while highly intoxicated, even when combined with the defendant's stated inability to recall the details of it, is insufficient to require a mitigating instruction. *See Cordova*, 733 S.W.2d at 190 (holding that testimony that appellant was "crazy drunk" was insufficient to require a mitigation instruction); *Hart*, 537 S.W.2d at 23–24 (holding that testimony from a witness that appellant "doesn't know what he is doing" when he is intoxicated and "likely to do anything," even coupled with appellant's inability to remember the offenses, was insufficient to require a mitigation instruction); *Lee v. State*,

8

874 S.W.2d 220, 224 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd) (testimony that appellant was highly intoxicated and "in a rage, like a person out of his mind" when he committed aggravated assault was insufficient to require an instruction); *see also Bean v. State*, No. 02-05-00353-CR, 2006 WL 2986659, at *2 (Tex. App.—Fort Worth Oct. 19, 2006, pet. ref'd) (mem. op., not designated for publication) (holding that testimony that defendant was "high," in a "daze" and not "thinking clearly" after a night of using drugs was insufficient to require an instruction).

In sum, we conclude that appellant did not raise a fact issue as to whether he was temporarily insane as a result of his intoxication at the time he shot at the police officers following him. The only fact appellant did establish was that he was highly intoxicated when he assaulted the police officers, and that is insufficient to require a mitigating instruction. *See Cordova*, 733 S.W.2d at 190; *Hart*, 537 S.W.2d at 23–24; *Lee*, 874 S.W.2d at 224; *Meine*, 356 S.W.3d at 611.

We overrule appellant's first two issues.

## B. Prosecutorial Misconduct

By his third issue, appellant complains that, during closing arguments, the State attacked him "over the shoulders" of his trial counsel. *See McGee v. State*, 774 S.W.2d 229, 238 (Tex. Crim. App. 1989). Appellant specifically argues that the State "attacked Appellant's attorney, thus striking at Appellant over defense counsel's shoulders by arguing that '[h]e plead guilty without the puppet pulling the strings, the puppet master.'"

### 1. Standard of Review and Applicable Law

Permissible jury argument falls into four distinct and limited categories: (1) summary of the evidence; (2) reasonable deductions from the evidence; (3) response to

9

opposing counsel's argument; or (4) plea for law enforcement. *Brown v. State*, 270 S.W.3d 564, 570 (Tex. Crim. App. 2008). "When evaluating an alleged improper argument, an appellate court views the statement in the context of the entire argument." *Davis v. State*, 268 S.W.3d 683, 694 (Tex. App.—Fort Worth 2008, pet. ref'd). Appellant must show that the State's argument was "a willful and calculated effort on the part of the State to deprive appellant of a fair and impartial trial." *Id.* (citing *Cantu v. State*, 939 S.W.2d 627, 633 (Tex. Crim. App. 1997)). An improper argument does not constitute reversible error unless "the argument is extreme or manifestly improper, violative of a mandatory statute, or injects new facts harmful to the accused into the trial proceeding." *Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000).

The Texas Court of Criminal Appeals has held that "[i]t is axiomatic that the State may not strike at the defendant over the shoulders of his counsel or accuse the defense counsel of bad faith and insincerity." *McGee*, 774 S.W.2d at 238 (citing *Fuentes v. State*, 664 S.W.2d 333 (Tex. Crim. App. 1984)). This language means that a prosecutor may not attack the defendant by arguing to the jury that appellant's trial counsel made an argument "insincerely and in bad faith." *Sawyer v. State*, 877 S.W.2d 883, 885 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd).

### 2. Discussion

Appellant complains that the prosecutor "struck at defendant over the shoulders of his counsel" by referring to trial counsel as "the puppet master." Appellant argues that the "prosecutor's comment was designed to prejudice the jury's deliberations by explicitly telling the jury that defense counsel specifically contrived the whole mitigation theory and persuaded Appellant to commit perjury," and that by overruling appellant's

10

objection, the trial court "permitted the jury . . . to believe that the State's argument was proper."

We begin by placing the prosecutor's remark in the context of his entire closing argument. *See Davis*, 268 S.W.3d at 694. The prosecutor twice defined trial counsel "as the puppet master" in his closing argument. In the first instance, the prosecutor was summarizing the testimony of a witness, Texas Ranger Jim Holland. Appellant's trial counsel had questioned in his own closing argument why Holland had not taken counsel up on his offer to permit Holland to interview appellant again before trial. In response, the prosecutor summarized the Ranger's testimony as follows:

> Why didn't the Ranger take up the Defense attorney's offer to talk to him again? Quite frankly, because as the Ranger told you, he didn't want this, having the Defense attorney pulling the puppet strings and hearing exactly what the Defense lawyer wanted the Ranger to hear come out of his mouth. That's why.

Appellant's counsel did not object to the prosecutor's summary of Holland's testimony and does not raise it on appeal. Later in the same argument, the following exchange occurred:

> [Prosecutor]: And I want you to think about this as I continue: He said, I am pleading guilty to what I did, taking responsibility. Right? That was their big ploy for accepting responsibility. Did you notice on the stand yesterday when I got done showing the tape, he said, that's the first time I've ever seen it? Did something click with you then, because it sure did with me? He wants you to believe I don't remember anything about that night after I left Vitty's . . . . Are you with me yet? He's pleading guilty to something he doesn't even know happened and never saw it. Are you telling me that a 32-year-old grown man, not a young man — those are the younger men. They're only 28. This 32-year-old grown man who is a leader, not a follower, by his own words, plead guilty to something he didn't even know — he has no conscious memory of and never even saw the tape? And he

11

goes, well, yeah, that's me. Yeah, I guess I did it. He plead guilty without the puppet pulling the strings, the puppet master.

[Defense Counsel]: Excuse me. That's an attack on Andy over my shoulders, and I object.

[Trial Judge]: Overruled.

Viewed in the context of the entire closing statement, the prosecutor's remark was not an attack on the ethics of appellant's trial counsel but on the veracity of appellant's testimony that he did not recall committing the charged offenses. The prosecutor was questioning why a defendant who testified that he was "a leader, not a follower" would plead guilty to two serious offenses if he really had no conscious memory of committing them and had not even looked at an available video recording of the events. Further, the prosecutor specifically stated that appellant pleaded guilty "without the puppet pulling the strings." The prosecutor's argument emphasized that appellant chose to plead guilty independently of his lawyer's influence or advice. We conclude from this language that the prosecutor did not argue "that defense counsel was leading Appellant to perjure himself" or otherwise attack appellant over his counsel's shoulders. The trial court therefore did not err in overruling appellant's objection.

We overrule appellant's third issue.

### C. Court Costs

By his fourth issue, appellant argues that the evidence is insufficient to support the trial court's assessment of court costs and attorney's fees. Appellant argues that he cannot be required to reimburse the State for his attorney's fees because the trial court twice determined him to be indigent and there is no record evidence of a material

12

change in his financial circumstances. *See Mayer v. State*, 309 S.W.3d 552, 556 (Tex. Crim. App. 2010) (observing that "defendant's financial resources and ability to pay are explicit critical elements in the trial court's determination of the propriety of ordering reimbursement of costs and fees"). The judgment does not contain a figure for the amount of attorney's fees. The State agrees that appellant cannot be required to pay attorney's fees, and requests that the judgment be modified to "reflect the designation 'N/A' in the blank for reimbursement of attorney fees." *See* TEX. R. APP. P. 43.2(b). We agree that the judgment should be modified.

Appellant further argues that the evidence is insufficient to support the assessment of court costs. At the time appellant filed his brief, there was no bill of costs in the record, but the judgment assessed $240 in court costs. The record does not indicate from where the trial court derived this figure. After appellant filed his brief, the State filed a supplemental clerk's record containing a bill of costs that lists $369 in court costs. *See Allen v. State*, No. 06-12-00166-CR, 2013 WL 1316965, at *2, _ S.W.3d _ (Tex. App.—Texarkana Apr. 3, 2013, no pet.) (holding that the State may supplement the record with a bill of costs even after the appellate record had been filed). A cost is only payable on the issuance of a certified bill of costs, TEX. CODE CRIM. PROC. ANN. art. 103.001 (West 2006), and it does not need to be orally pronounced with or incorporated into the written judgment to be effective. *Armstrong v. State*, 340 S.W.3d 759, 766–67 (Tex. Crim. App. 2011); *see also Weir v. State*, 278 S.W.3d 364, 367 (Tex. Crim. App. 2009). Because there is now a certified bill of costs in the record, we therefore conclude that the evidence is sufficient to support the $369 in court costs. *See Allen*, 2013 WL 1316965, at *4. We also conclude that the judgment should be modified to

13

reflect that appellant is assessed $369 in court costs. *See id.* (modifying the judgment to reflect the figure assessed in the bill of costs when the two figures differed).

Appellant's fourth issue is otherwise overruled.[4]

### III. CONCLUSION

We modify the judgment to affirmatively reflect that appellant is not assessed attorney's fees and to reflect that appellant is assessed $369 in court costs. We affirm as modified.

_____<br>
DORI CONTRERAS GARZA<br>
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
30th day of August, 2013.

---

[4] Appellant also includes language under this issue that could be construed as asking us to extend to court costs the court of criminal appeals' holding in *Mayer*. In *Mayer v. State*, the court of criminal appeals held that an indigent defendant cannot be required to reimburse attorney's fees absent a material change in the defendant's financial circumstances. 309 S.W.3d 552, 556 (Tex. Crim. App. 2010). To the extent that appellant is actually making this argument, we decline appellant's invitation to extend *Mayer*. *See id*; *see also Dissette v. State*, No. 09-11-00672-CR, 2012 WL 1249014, at *2 (Tex. App.—Beaumont April 11, 2012, no pet.) (mem. op., not designated for publication) (refusing to extend *Mayer* to court costs because the statutes governing payment of attorney's fees and court costs use substantively different language).