**Edward Penn LEE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–93–00400–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

March 31, 1994.

Discretionary Review Refused
June 15, 1994.

■■■■■■■■■■■■■■■■■■■■■

Ronnie G. Harrison, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., Karen A. Clark, Asst. Atty., Vicki Turko, Asst. Dist. Atty., Harris County, for appellee.

Before DUGGAN, O'CONNOR and HEDGES, JJ.

## OPINION

DUGGAN, Justice.

A jury found appellant, Edward Penn Lee, guilty of aggravated assault and assessed punishment at eight-years confinement. In five points of error, appellant argues that his trial counsel was ineffective by: (1) agreeing to stipulate to the admission of the knife used in the assault; (2) failing to establish appellant's intoxication as mitigation of punishment; (3) failing to object to the prosecutor's argument during punishment; (4) failing to have an expert examine appellant to determine whether his intoxication could be considered as mitigation of punishment; and (5) creating cumulative error. We affirm.

On November 2, 1992, before 2:00 p.m., appellant and a neighbor, Robert Williams, drank four half-pints of gin at Williams' home. The complainant, Elton G. Starghill, was drinking with Dolly Wade at the house next to Williams'. An unidentified man carrying a six-pack of beer approached and asked if anyone wanted a beer. As Starghill stepped out and said yes, appellant asked what he was reaching for. Starghill said he was getting a beer. Appellant then pushed Starghill and slapped him in the face. The two had about a 30–second "tussling and wrestling" match. Starghill then grabbed appellant and "set him next door ... on the porch." Starghill said that appellant was in a drunken, violent rage.

Starghill continued to drink and talk with Ms. Wade while appellant cursed loudly from the porch next door. At approximately 3:00 p.m., appellant approached Starghill from the rear of his chair and stabbed him three times, first in the chest and then on his elbow. The third attempt resulted in Starghill getting "nipped" in an unidentified place. Starghill ran to his aunt's residence; appellant jumped in a car driven by Anthony St. Val, and told St. Val to take him home. Appellant tried to convince St. Val to let him hide the knife in St. Val's home, but St. Val refused.

Houston Police Sergeant Glen Fuhs and Officer Padilla investigated the incident. Sergeant Fuhs found and recovered the knife in appellant's home under the cushion of a living room couch. Officer Padilla tagged the knife and placed it in the evidence room at the police department.

■ In his first point of error, appellant contends that his trial counsel's agreement to stipulate to Officer Padilla's testimony regarding the chain of custody of the knife constituted ineffective assistance of counsel. In *Hernandez v. State,* 726 S.W.2d 53, 56–57 (Tex.Crim.App.1986), the Court adopted the federal standard for reviewing claims of ineffective assistance of counsel set forth in *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Appellant must show that the trial counsel's performance was deficient, and that the deficient performance prejudiced the defense so as to deprive him of a fair trial, a trial with a reliable result. *Id.*

■ Appellant argues that because Padilla tagged the knife and placed it in the evidence room, he was the only officer who could testify about the chain of custody. *See Stoker v. State,* 788 S.W.2d 1, 10 (Tex.Crim. App.1989). The sufficiency of the predicate to admit evidence is discretionary with the trial court. *Smith v. State,* 683 S.W.2d 393, 404 (Tex.Crim.App.1984). Sergeant Fuhs' testimony that (1) he found the knife under the cushion of the couch, (2) the knife presented at trial was the same knife as the one on the couch, and (3) he checked out the knife from the evidence room and brought it to court, proved the beginning and end of the chain of custody. When the beginning and end of a chain of custody is established, and no evidence shows tampering, any gaps in

the chain go to the weight rather than to the admissibility of the evidence. *Juhasz v. State*, 827 S.W.2d 397, 403 (Tex.App.—Corpus Christi 1992, pet. ref'd). Appellant presented no evidence to show that the knife had been tampered with in any manner.

▪ Starghill testified that the blade of the knife at trial looked like the knife he saw in appellant's hand after he stabbed him. St. Val testified that the knife at trial looked "like the same knife that was in his [defendant's] hand that day when he [defendant] tried to hide it in my house." Appellant's medical records were introduced, which reflected knife wounds to the chest and arm. It was not necessary to admit the knife into evidence for the jury to find beyond a reasonable doubt that appellant stabbed Starghill in the chest with a deadly weapon, namely a knife, as alleged in the indictment. Appellant's counsel was not ineffective in agreeing to stipulate to Padillo's testimony regarding chain of custody. Counsel's performance did not prejudice the defense so as to deprive appellant of a fair trial with a reliable result. *See Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064. We overrule point of error one.

In his second point of error, appellant contends that his trial counsel's failure to establish intoxication as mitigation of punishment constituted ineffective assistance of counsel. In his related, fourth point of error, appellant contends that his trial counsel's failure to have an expert examine him to establish whether intoxication could be considered as mitigation of punishment constituted ineffective assistance of counsel.

▪ To raise the issue of insanity by voluntary intoxication for the purpose of mitigation under TEX.PENAL CODE ANN. § 8.04 (Vernon Supp.1994), the evidence must establish that appellant, as a result of intoxication (1) did not know his conduct was wrong, or (2) was incapable of conforming his conduct to the requirements of the law he violated. *Cordova v. State*, 733 S.W.2d 175, 190 (Tex. Crim.App.1987), *cert. denied*, 487 U.S. 1240, 108 S.Ct. 2915, 101 L.Ed.2d 946 (1988); *see also Sawyers v. State*, 724 S.W.2d 24, 33 (Tex.Crim.App.1986) (citing *Hart v. State*, 537 S.W.2d 21, 24 (Tex.Crim.App.1976)).

▪ In light of this standard, appellant argues that the following testimony by Starghill established that as a result of intoxication, appellant did not know his conduct was wrong:

Q: When you said Edward Penn Lee, when did you first see him that afternoon?

A: ... He was around there all day long, really, drinking and talking whatever.

. . . .

Q: When you first saw Mr. Lee, can you tell us how he acted?

A: Drunk, really.

. . . .

Q: How did he act when he said that to you?

A: In a violent way, such as he is drunk and talking and spitting in your face as he is talking to you.

Q: Did he have anything in his hand? Was he drinking or anything?

A: He had a beer in his hand.

. . . .

A: I can't remember back that far the cuss words, but he was in a violent rage.

. . . .

Q: Why did you set him down on the porch of that house?

A: Because he was drunk.

. . . .

Q: What was Mr. Lee doing after you set him down at 1020?

A: He was on the porch steady cussing and stuff. I wasn't paying no attention to him.

Q: Was there anybody else there with him at 1020 Gillette?

A: No, it wasn't.

Q: Was he still drinking his beer?

A: Yes.

. . . .

A: I didn't hear anything, ma'am. Just come out in a rage.

. . . .

Q: How did he act after he stabbed you?

A: How did he act? He was totally in a rage, like a person is out of his mind.

Further, Robert Williams testified that he and appellant drank four half-pints of gin before 2:00 p.m.

We disagree that this evidence raised an issue of insanity by voluntary intoxication, i.e., that appellant did not know his conduct was wrong; to the contrary, it merely tended to show that appellant was intoxicated. Undisputed evidence showed that, immediately following the stabbing, appellant got into St. Val's car, told St. Val to drive him home, and tried to persuade St. Val to hide the knife appellant had used. *See Cordova*, 733 S.W.2d at 190 (evidence that defendant was "crazy drunk" insufficient to show temporary insanity); *Still v. State*, 709 S.W.2d 658, 661 (Tex.Crim.App.1986) (evidence that defendant "lost his head" insufficient to show temporary insanity).

> Neither the statute nor our case law construing the statute permits the inference that merely where one presents evidence that he was intoxicated ... when he committed the crime that this automatically means that when the individual committed the crime he was then temporarily insane by reason of voluntarily ingesting ... substance into his body....

*Cordova*, 733 S.W.2d at 190. Similarly, in the case before us, we find the complainant's testimony that appellant was "totally in a rage, like a person out of his mind," was insufficient to require a jury instruction on temporary insanity caused by voluntary intoxication. Therefore, trial counsel was not ineffective either for (1) failing to establish intoxication as mitigation of punishment, or (2) failing to have an expert examine him to establish whether intoxication could be considered as mitigation of punishment. We overrule points of error two and four.

██ In his third point of error, appellant contends that trial counsel's failure to object to the prosecutor's argument during punishment constituted ineffective assistance of counsel. We are not to apply the *Strickland* two-step analysis to the punishment phase of noncapital trials. *Ex parte Duffy*, 607 S.W.2d 507, 516 (Tex.Crim.App.1980). Instead, we use the single standard of reasonably effective assistance of counsel. *Id.; Ex*

*parte Walker*, 777 S.W.2d 427, 431 (Tex. Crim.App.1989).

Appellant complains that counsel was ineffective during punishment when he failed to object to the following argument by the prosecutor:

> There are certain verdicts in here that talk about a community correctional facility. If you send out a note asking questions about it, you are going to be told to continue to deliberate. Don't even bother with those forms. We can explain why later. Don't even bother filling in those forms.

Appellant argues he suffered egregious harm because the trial court allowed "the prosecutor to steer the jury away from an alternative punishment."

██ Proper jury argument encompasses four areas: (1) summation of the evidence; (2) reasonable deductions arising from the evidence; (3) answers to opposing counsel's argument; and (4) pleas for law enforcement. *Albiar v. State*, 739 S.W.2d 360, 362 (Tex. Crim.App.1987); *Morris v. State*, 755 S.W.2d 505, 509 (Tex.App.—Houston [1st Dist.] 1988, pet. ref'd). Before the prosecutor gave her argument, defense counsel had urged the jury to choose probation for appellant "by signing your verdict here in the third alternative. This is the probation of penitentiary term between two and ten years. And as far as the period of time, I have no comment on that. I am just asking that you place him on probation." We believe the prosecutor's general argument falls into the third category of proper jury argument, an answer to opposing counsel's argument for probation. Nevertheless, the specific argument, "Don't even bother with those forms. We can explain why later. Don't even bother filling in those forms," was an improper prosecutorial request to the jury to ignore the community correctional facility as a possible consideration of punishment.

██ We will consider whether the statement created reversible error. Tex.R.App.P. 81(b)(2). In addition to confinement in a community facility for any term of not more than one year, the jury could have imposed a minimum sentence of two years and maximum sentence of 10–years imprisonment. In

*Tamez v. State,* 865 S.W.2d 518, 521 (Tex. App.—San Antonio 1993, pet. ref'd), the court held that the trial court's *total failure to instruct* the jury about the community correctional facility punishment option did not amount to reversible error. The court considered the following to be critical in its decision:

> Appellant nearly killed his roommate by stabbing him in the chest. The jury rejected appellant's self-defense claims, and appellant testified at trial that he knew his knife was capable of causing death or serious bodily injury. After finding appellant guilty, the jury assessed punishment at four years, without probation.

*Id.* The court then concluded that because the jury's decision reflected no consideration of the minimum punishment range, it was "highly unlikely that the jury's consideration of punishment would have been affected by the inclusion of the community correctional facility punishment option, the maximum punishment being one year's confinement." *Id.*

We note that the complained-of error in the case before us is not as serious as that in *Tamez.* Unlike *Tamez,* the trial court *included* the proper jury instruction on the community correctional facility, which the jury may have considered.

Similar to the strong evidence in *Tamez,* there was uncontroverted testimony that appellant stabbed Starghill with a knife, ordered St. Val to take him home, attempted to hide the knife in St. Val's house, and fled from the police. At punishment, appellant testified that he had pled guilty to two prior offenses, driving while intoxicated in 1990, and assault on his wife in 1991. The jury also heard evidence of appellant's failure to comply with the terms of his probation. Moreover, the jury's sentence was close to the maximum allowed, eight years with no probation. It is clear by its verdict that the jury was not considering the minimum punishment range. Thus, the prosecutor's improper request to ignore the community correctional facility option for punishment was not reversible error.

On similar reasoning, defense counsel's failure to object may have been a strategic decision. Appellant's counsel argued for probation, but may well have attempted to avoid trivializing the probation request by not asking for a minimum probationary period ("As far as the period of time, I have no comment on that."). Similarly, counsel may well have believed that by ignoring the option of confinement in a community facility, the jury might consider probation more seriously. We find trial counsel's failure to object to the prosecutor's statements was reasonable strategy, and not ineffective assistance of counsel. We overrule point of error three.

In his fifth point of error, appellant claims that the cumulative effect of trial counsel's errors caused him to suffer harm beyond a reasonable doubt. In light of the disposition of the first four points of error, we overrule point of error five.

We affirm the trial court's judgment.