Affirmed and Opinion filed December 19, 2002
















Affirmed and
Opinion filed December 19, 2002.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-02-00041-CR

____________

 

FRANCISCO J. BARRERA, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 

_______________________________________________

 

On Appeal from
the 185th District Court

Harris County, Texas

Trial Court
Cause No. 877,130

_______________________________________________

 

O P I N I O
N

            Appellant, Francisco Barrera,
appeals from his conviction for burglary of a habitation.  After appellant waived his right to trial by
jury, the trial court found him guilty and assessed punishment at eight years’
confinement. On appeal, appellant attacks the legal and factual sufficiency of
the evidence and contends that his sentence constitutes cruel and unusual
punishment in violation of the United
 States and Texas constitutions.  We affirm.




I.  The Evidence

            At trial, the complainant, Fidencio Luna, testified that on May 12, 2001, he and his wife, Melissa
Luna, spent the night at her mother’s house. 
Melissa’s mother was out of town, and Fidencio
stated that they stayed at her house to take care of it while she was
away.  Fidencio
testified that on the day in question, he was lying down in the back bedroom of
the house, along with  Melissa and their
six-month old daughter, when he heard the front door open and hit the closet
door.  He opened his eyes and observed
appellant come into the bedroom. 
According to Fidencio, appellant was carrying
a pistol and said, in Spanish, “I’m going to kill you, m----- f-----.”  Fidencio further
testified that when he saw appellant getting ready to squeeze the trigger he
pushed appellant’s hand up and the pistol discharged.  Fidencio then
jumped off the bed and pushed appellant, who fell back against a wall.  They began wrestling and the gun discharged
again.  Fidencio
stated that after this second discharge, appellant began to beat him in the
head with the gun.  Fidencio
managed to get appellant into a headlock but then released him and called the
police.  At this time, he noticed that
the gun was on the floor in two pieces.

            Fidencio
testified unequivocally that at no time did he give appellant permission to
enter the home.  He also stated that on
the night in question he was living in the house and was in possession of it.  He testified that appellant seemed fully
aware of his actions that night.

            Melissa Luna, the complainant’s
wife, testified that on May 12,
 2001, she and her husband were staying at her mother’s house to
look after the house because her mother was out of town.  She stated that about 7 a.m. on the day in question she was in
the back bedroom with Fidencio and their six-month
old daughter.  She heard the door to the
bedroom open, and she saw appellant enter the room carrying a pistol.  According to Melissa, appellant stated, in Spanish,”
“I’m going to kill you, m----- f-----s.” 
Appellant began to hit Fidencio in the head
with the pistol, and then the two fought and the pistol discharged.  Melissa stated that she then grabbed the baby
and ran.  She heard another gunshot after
she ran out of the room.  She testified
that she ran out of the house and down the street and then called 911.

            Melissa also testified that she had
previously met appellant.  Melissa and Fidencio had experienced marital problems shortly before
May 12, and Melissa spent a night in a motel room with a friend.  She testified that her friend was appellant’s
girlfriend at the time and he stayed in the motel room with her, her friend,
and her children.  Melissa also stated
that she had Fidencio’s van at the motel.  Fidencio testified
that he came and retrieved the van from the motel and that there was a pile of
clothes in the back of the van that did not belong to him.  Melissa acknowledged that some of appellant’s
clothes were in the van.

            Officer Herlinda
Delarosa of the Houston Police Department also testified.  She stated that she was one of several
officers dispatched to the scene of the disturbance.  She further stated that at the scene she
observed appellant being brought around from the back of the house and being
placed under arrest.  Officer Gary B.
Young testified that he too responded to the scene.  He stated that he located a pistol frame at
the residence but that it was missing its handle.  He observed that there were five live rounds
in the pistol and one spent shell, indicating that the gun had been fired one
time.  Fidencio
Luna testified that he discovered the handle of a pistol in the house.

            Appellant testified on his own
behalf.  He insisted that he went to the
residence to retrieve his wallet, which he believed he had left in the
van.  Appellant admitted he had been
drinking “all night long” before he drove to the house where the Lunas were staying. 
He denied having a weapon when he got to the house.  Appellant admitted that he went to the house
uninvited and that no one invited him in when he alleges he knocked on the
door.  He stated that when he entered the
house, Fidencio charged him and they fought.




II.  Sufficiency of the Evidence

            In his first issue, appellant
attacks the legal sufficiency of the evidence to support his conviction.  In his second issue, appellant attacks the
factual sufficiency of the evidence. 
Appellant essentially makes the same contention under both issues so we
will address them together.

A.  Standards of Review

            In reviewing legal sufficiency, we
examine the evidence in the light most favorable to the verdict and ask whether
any rational trier of fact could have found all of
the elements of the offense beyond a reasonable doubt.  Jackson
v. Virginia, 443 U.S. 307, 319
(1979);  Santellan v. State, 939 S.W.2d 155, 160 (Tex. Crim.
App. 1997).  We accord great deference to
the responsibility of the trier of fact to resolve
conflicts in the testimony, to weigh the evidence, and to draw reasonable
inferences therefrom. 
See Clewis
v. State, 922 S.W.2d 126, 133 (Tex. Crim. App.
1996).  We further presume that any
conflicting inferences from the evidence were resolved by the jury in favor of
the prosecution, and we must defer to that resolution.  See id.
at 133 n.13.  In conducting this review,
the appellate court is not to re-evaluate the weight and credibility of the
evidence, but must act only to ensure the jury reached a rational
decision.  Muniz v. State, 851 S.W.2d 238, 246 (Tex. Crim.
App. 1993); Moreno v. State, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988).

            In reviewing the factual sufficiency
of the evidence, we examine all of the evidence without the prism of “in the
light most favorable to the prosecution” and set aside the verdict only if it
is so contrary to the overwhelming weight of the evidence as to be clearly wrong
and unjust.  Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000).  We
consider all of the evidence in the record and not just the evidence which
supports the verdict.  Santellan v. State, 939 S.W.2d 155, 164 (Tex. Crim. App. 1997). 
The court is authorized to disagree with the jury’s determination, even
if probative evidence exists which supports the verdict.  Clewis, 922 S.W.2d at 133. 
However, a factual sufficiency review must be appropriately deferential
to avoid substituting the appellate court’s judgment for that of the fact
finder or intruding upon the jury’s role as the sole judge of the weight and
credibility of testimony.  Johnson, 23 S.W.3d at 7.  Unless the record clearly reveals that a
different result is appropriate, we must defer to the jury’s determination
concerning the weight given to contradictory testimony.  Id. at 8.

B.  Analysis

            The indictment charged appellant as
follows:

Francisco J. Barrerra . . . on or about May 12, 2001, did then and there
unlawfully, without the effective consent of the owner, namely, without any
consent of any kind, intentionally and knowingly enter a habitation owned by Fidencio Luna, a person having a greater right to
possession of the habitation than the defendant, and commit and attempt to
commit the felony of aggravated assault with a deadly weapon, to wit: a
firearm.

(emphasis
omitted).  Appellant’s sole contention
regarding the legal and factual sufficiency of the evidence is his assertion
that the state failed to prove the complainant owned the house that he
allegedly entered without permission.  In
support of his argument, appellant relies on the fact that the complainant
stated he was staying at his mother-in-law’s house at the time of the offense.  Appellant contends that this was an admission
that the complainant was not the owner of the habitation as alleged in the
indictment.  Appellant acknowledges,
however, that the indictment defined “owner” to include “a person having a
greater right to possession of the habitation than the defendant.”[1]  Regardless, appellant insists that without
the testimony of complainant’s mother-in-law, the evidence was insufficient to
establish that complainant was an “owner” or, stated another way, that
complainant had a greater right of possession to the habitation than did
appellant.  Appellant cites no case law
to support his contention and makes no specific argument as to why the
mother-in-law’s testimony was required.

            Fidencio
Luna, and his wife, Melissa Luna, both testified that they were staying in the
house to take care of it because her mother was away.  Appellant testified that he had not been
invited to the house or into the house. 
The trial judge was well within his authority as trier
of fact to believe this testimony.  See Joseph v. State, 897 S.W.2d 374, 376 (Tex. Crim. App.
1995) (stating that “[t]he trial judge, when sitting as the sole trier of facts, is the exclusive judge of the credibility
of the witnesses and the weight to be given to their testimony”).  Proof of ownership may be made by
circumstantial evidence, just as any other issue in a criminal case.  Robertson
v. State, 871 S.W.2d 701, 707 (Tex. Crim. App.
1993); Liggens v. State, 50 S.W.3d 657, 660 (Tex.
App.—Fort Worth 2001, pet. ref’d); see also Hudson v. State, 799 S.W.2d
314, 315–16 (Tex. App.—Houston [14th Dist.] 1990, pet. ref’d)
(finding evidence sufficient to demonstrate greater right of possession where
complainant testified that appellant had been her roommate prior to burglary
but had moved out and turned over key to apartment).  Consequently, the testimony of the
mother-in-law, or other owner of title to the property, was not necessary to
sustain the conviction.  Based on the
testimony of appellant, complainant, and Melissa Luna, we find that the
evidence was legally and factually sufficient to demonstrate that complainant
had a greater right to possession of the habitation than did appellant. 

III.  Punishment

            In his third and fourth issues,
appellant contends that the sentence was not proportional to the offense and
thus constituted cruel and unusual punishment in violation of, respectively,
the federal and Texas
constitutions.  See U.S. Const.
amend. VIII; Tex. Const. art. I,
§ 13.[2]  Appellant’s trial counsel, however, failed to
raise this argument in the court below by making a timely request or objection
on these grounds.  The argument is
therefore waived.  See Tex. R. App. P. 33.1;
Curry v. State, 910 S.W.2d 490, 497
(Tex. Crim. App. 1995).

            Furthermore, even if appellant had
preserved the issue, the sentence did not constitute cruel and unusual
punishment.  Appellant was convicted of a
first degree felony and sentenced to eight years confinement.  See Tex. Pen. Code Ann. § 30.02(d)(2) (Vernon Supp.
2002).[3]  The statutory range of punishment for a first
degree felony is five to ninety-nine years. 
Id. § 12.32(a)
(Vernon
1994).  Generally, punishment assessed
within the statutory limits is not considered cruel and unusual
punishment.  Samuel v. State, 477 S.W.2d 611, 614 (Tex. Crim.
App. 1972); Cooks v. State, 5 S.W.3d
292, 298-99 (Tex. App.—Houston [14th Dist.] 1999, no pet).  However, in Solem v. Helm, the United States Supreme Court recognized a narrow
exception to this general rule.  463 U.S. 277, 290
(1983).  Under Solem, a reviewing court must
first make a comparison of the gravity of the offense with the severity of the
sentence.  See Harmelin v. Michigan, 501 U.S. 957, 1005
(1991).  If, after making the comparison,
a court determines the sentence is grossly disproportionate, it considers the
sentences received for similar crimes in the jurisdiction and in other
jurisdictions to determine the constitutionality of the sentence.  See id.

            The evidence supports the conclusion
that appellant entered a habitation and attacked complainant in the home,
beating complainant in the head with a pistol, and discharging the weapon at
least once in the general direction of an infant.  Appellant could have received a punishment
ranging from five to 99 years.  See Tex.
Pen. Code Ann. §§ 12.32(a).  Eight
years is on the low end of the possible range.

            By making the entering of a
habitation for the purpose of committing a felony a first degree felony, the
legislature has identified the crime as among the most serious acts addressed
in the penal code.  And rightfully so; a
person’s home is imbued in both the law and the mind with a great sense of
privacy and protection.  See generally Laney v. State, 76 S.W.3d
524, 528 (Tex. App.—Houston [14th
Dist.] 2002, pet. filed) (discussing privacy concerns relating to
residences).  We find the eight year
sentence imposed by the court in this case is not grossly disproportionate to
the crime committed.

            Appellant points out that he
expressed remorse when he testified during the punishment phase, that he had
never previously been convicted of a felony, and that there was testimony that
he had friends and family in the community who would have supported him had he
been placed on probation.  Although these
factors may well have been considered by the trial court in its assessment of
punishment, they do not have a significant impact on our analysis of the
proportionality of the punishment imposed.

            Appellant additionally notes that he
testified he had been drinking heavily prior to the criminal episode.  While voluntary intoxication is not a defense
to the commission of a crime, evidence of temporary insanity caused by
intoxication may be introduced in mitigation of the penalty for the charged
offense.  Tex. Pen. Code Ann. § 8.04(a)-(b) (Vernon 1994).[4]  Appellant, however, does not contend, and
presented no evidence to suggest, either that his intoxication was involuntary
or that it caused temporary insanity. 
Consequently, his level of intoxication has no bearing on whether his
sentence is proper.

            In sum, we find appellant’s sentence
is not grossly disproportionate to his crime. 
Accordingly, we need not examine the other Solem factors.  See Harmelin, 501 U.S. at
1006.  We overrule appellant’s third and
fourth issues.

            The judgment of the trial court is
affirmed.

 

                                                                        /s/        Eva M. Guzman

                                                                                    Justice

 

Judgment
rendered and Opinion filed December
 19, 2002.

Panel
consists of Justices Edelman, Seymore, and Guzman.

Do Not
Publish — Tex. R. App. P.
47.3(b).

 

 











            [1]  The indictment is proper under the Texas
Penal Code.  Section 30.02 (a) of the
code states  “A person commits [burglary]
if, without the effective consent of the owner, the person . . . (3) enters a
building or habitation and commits or attempts to commit a felony, theft, or an
assault.”  Tex. Pen. Code Ann. § 30.02(a) (Vernon Supp.
2003).  Section 1.07(35) states that:
“‘Owner’ means a person who: (A) has title to the property, possession of the
property, whether lawful or not, or a greater right to possession of the
property than the actor . . . .”  Id. § 1.07(35)
(Vernon
1994).  “Possession” is defined as
meaning “actual care, custody, control, or management.”  Id. §
1.07(39).





            [2]  The Eighth Amendment has been incorporated
through the Due Process Clause of the Fourteenth Amendment and made binding
upon the states.  See Robinson v. California, 370 U.S. 660, 666
(1962).  Although appellant makes his
state and federal constitutional claims under separate issues, he fails to
argue the existence of any distinctions between federal and state law.  Accordingly, we will not address his state
constitutional claims separately.  See Balentine v.
State, 71 S.W.3d 763, 772 n.8
(Tex. Crim. App. 2002).





            [3]  Under section 30.02(d), a burglary is
considered a first degree felony if: “(1) the premises are a habitation; and
(2) any party to the offense entered the habitation with intent to commit a
felony other than felony theft or committed or attempted to commit a felony
other than felony theft.”  Tex. Pen. Code Ann. § 30.02(d).





            [4]  To raise issue of temporary insanity by
voluntary intoxication, defendant must present evidence that his intoxication
caused him to not know that his conduct was wrong or rendered him incapable of
conforming his conduct to the requirements of the law he violated.  Lee v.
State, 874 S.W.2d 220, 223 (Tex. App.—Houston [1st Dist.] 1994, pet. ref’d).