

IN THE
TENTH COURT OF APPEALS

No. 10-12-00439-CR

JOHN CARL ARABIE, JR.,

Appellant

v.

THE STATE OF TEXAS,

Appellee

From the 54th District Court
McLennan County, Texas
Trial Court No. 2012-82-C2

**O P I N I O N**

John Carl Arabie, Jr. was convicted of murder and sentenced to life in prison. *See*
TEX. PENAL CODE ANN. § 19.02 (West 2011). Because the trial court did not err in
denying his requested punishment phase jury instruction on temporary insanity due to
intoxication, we affirm the trial court's judgment.

**BACKGROUND**

David Sanders was shot at his home during the early morning hours of October
23, 2011. Someone had been at his front door while Sanders was watching a ball game.

Sanders did not open the door but saw that a person with a dark shirt and light pants was at the door. When the person left the front door, Sanders went to check his back door. Sanders's wife heard a shot and then found her husband, with a gunshot wound to his head, inside the back door. He had been shot through the back door window. A person matching the description of the individual at Sanders's front door was located and taken into custody behind Sanders's property soon after the shooting. A gun was also located in the area. Sanders's wife told police that Sanders had recently sold a vehicle to Arabie. The person in custody was Arabie. The car which Sanders sold to Arabie was parked down the street from Sanders's home.

**TEMPORARY INSANITY-INTOXICATION**

In one issue, Arabie argues the trial court should have instructed the jury at the punishment phase regarding the mitigating issue of temporary insanity due to intoxication. Arabie requested the inclusion of the instruction in the charge on punishment. Although Arabie directed the trial court to evidence in the record of Arabie's intoxication, he did not direct the trial court to evidence which Arabie believed would show that because of his intoxication, he did not know his conduct was wrong. The State pointed out this deficiency, and the trial court denied Arabie's requested instruction.

*Law*

Insanity is an affirmative defense to prosecution that, at the time of the conduct

charged, the actor, as a result of severe mental disease or defect, did not know that his conduct was wrong. TEX. PENAL CODE ANN. § 8.01(a) (West 2011). Voluntary intoxication is *not* a defense to the commission of a crime; but evidence of *temporary insanity* caused by intoxication may be introduced by the actor in mitigation of his punishment.[1] TEX. PENAL CODE ANN. § 8.04(a), (b) (West 2011). In other words, unlike the defense of insanity which would bar the conviction of a crime, evidence of temporary insanity caused by intoxication, could be used by a jury to lessen the punishment, *i.e.*, time in jail/prison or fine or both, it assesses for the convicted person.

When temporary insanity is relied on as a defense and the evidence tends to show that the insanity was caused by intoxication, the court is to charge the jury in accordance with the provisions of section 8.04.[2] *Id*. (c). The trial court, however, is not prohibited from giving a mitigation instruction if circumstances, different than those outlined in subsection (c), otherwise raise an issue under either subsection (a), voluntary intoxication, or (b), temporary insanity due to intoxication. *Taylor v. State*, 885 S.W.2d 154, 156 (Tex. Crim. App. 1994).

Like the affirmative defense of insanity and any other defensive issue, whether an appellant was entitled to a mitigation instruction under section 8.04(b) depends

---

[1] (a) Voluntary intoxication does not constitute a defense to the commission of crime.

(b) Evidence of temporary insanity caused by intoxication may be introduced by the actor in mitigation of the penalty attached to the offense for which he is being tried.

[2] (c) When temporary insanity is relied upon as a defense and the evidence tends to show that such insanity was caused by intoxication, the court shall charge the jury in accordance with the provisions of this section.

upon whether the issue is raised by the evidence. *San Miguel v. State*, 864 S.W.2d 493, 495-496 (Tex. Crim. App. 1993) (temporary insanity); *cf. Coble v. State*, 871 S.W.2d 192, 202 (Tex. Crim. App. 1993) (insanity); *Ferrel v. State*, 55 S.W.3d 586, 591 (Tex. Crim. App. 2001) (self-defense). However, before it is necessary for the trial court to affirmatively instruct the jury on voluntary intoxication as mitigating evidence at the punishment stage of the trial, the defendant must establish that he was intoxicated and that the intoxication rendered him temporarily "insane." *Arnold v. State*, 742 S.W.2d 10, 14 (Tex. Crim. App. 1987); *Cordova v. State*, 733 S.W.2d 175, 190 (Tex. Crim. App. 1987). To do this, the affirmative defense of insanity is considered together with the mitigation issue of temporary insanity due to intoxication. *Id*. Thus, the defendant must establish that his voluntary intoxication caused him to not know his conduct was wrong. *Mendenhall v. State*, 77 S.W.23d 815, 817-818 (Tex. Crim. App. 2002). *See also Ex parte Martinez*, 195 S.W.3d 713, 722 (Tex. Crim. App. 2006). He must do more than merely present evidence of intoxication or even gross intoxication. *Arnold*, 742 S.W.2d at 14.

When to give the mitigation instruction for temporary insanity due to intoxication is more problematic than most defensive or mitigation instructions. The often stated standard for giving any defensive-type instruction is "An accused is entitled to an instruction on every defensive or mitigating issue raised by the evidence… regardless of whether the evidence is strong or weak, unimpeached or contradicted and regardless of whatever the trial judge may think about the credibility

of the evidence." *Arnold v. State*, 742 S.W.2d 10, 13 (Tex. Crim. App. 1987) (temporary insanity). *See also Allen v. State*, 253 S.W.3d 260, 267 (Tex. Crim. App. 2008) (consent); *Ferrel v. State*, 55 S.W.3d 586, 591 (Tex. Crim. App. 2001) (self-defense); *Granger v. State*, 3 S.W.3d 36, 38 (Tex. Crim. App. 1999) (mistake of fact). This standard indicates that "some" evidence is sufficient. *Trevino v. State*, 100 S.W.3d 232, 238 (Tex. Crim. App. 2003). In determining whether a defense is raised, the court must rely on its own judgment, formed in the light of its own common sense and experience, as to the limits of rational inference from the facts proven. *Shaw v. State*, 243 S.W.3d 647, 658 (Tex. Crim. App. 2007). The evidence presented must be such that it will support a rational jury finding as to each element of the defense or mitigation issue.[3] *See id*.

We have dealt with this general instruction standard and its application in a number of cases in recent years.[4] Likewise, the other courts, including the Court of Criminal Appeals, have frequently been required to address the issue.[5]

---

[3] As stated previously, the elements of the mitigation issue of temporary insanity due to intoxication are: 1) intoxication, and 2) such intoxication was sufficient to render the defendant temporarily insane.

[4] *Harrison v. State*, ___ S.W.3d ___, No. 10-12-00103-CR, 2013 Tex. App. LEXIS 11635, (Tex. App.—Waco Sept. 12, 2013, no pet. h.); *Busby v. State*, No. 10-12-00250-CR, 2013 Tex. App. LEXIS 10615 (Tex. App.—Waco Aug. 22, 2013, no pet. h.) (not designated for publication); *Ray v. State*, ___ S.W.3d ___, No. 10-12-00271-CR, 2013 Tex. App. LEXIS 4939 (Tex. App.—Waco Apr. 18, 2013, no pet. h.); *Peck v. State*, No. 10-11-00386-CR, 2012 Tex. App. LEXIS 9343 (Tex. App.—Waco Nov. 8, 2012, pet. ref'd) (not designated for publication); *Villa v. State*, No. 10-09-00385-CR, 2011 Tex. App. LEXIS 3782 (Tex. App.—Waco May 18, 2011, pet. ref'd) (not designated for publication).

[5] *See e.g. Celis v. State*, ___ S.W.3d ___, 2013 Tex. Crim. App. LEXIS 759 (Tex. Crim. App. May 15, 2013); *Allen v. State*, 253 S.W.3d 260, 267 (Tex. Crim. App. 2008); *Granger v. State*, 3 S.W.3d 36, 38 (Tex. Crim. App. 1999); *Loris v. State*, No. 02-11-00464-CR, No. 02-11-00465-CR, No. 02-11-00466-CR2013 Tex. App. LEXIS 9669 (Tex. App. —Fort Worth Aug. 1, 2013, no pet. h.) (not designated for publication); *Isaacson v. State*, No. 03-10-00866-CR, 2013 Tex. App. LEXIS 5807 (Tex. App.—Austin May 10, 2013, no pet.) (not

It is not the introduction of the evidence that presents the problem for the trial courts but rather whether the charge will include an instruction. There are several reasons for this difficulty.

**First**: It is not infrequent that there is evidence of alcohol consumption and impairment of motor skills and decision making involved in any particular crime, but especially murder. Alcohol consumption may even lead to unusual or bizarre behavior. But that does not mean that in every such case the instruction is required.

**Second**: Judges and jurors tend to think of insanity as a defense to the offense not as a basis for mitigation of the offense's punishment.

**Third**: Trial court judges are trained from the time before they are judges that a state trial court judge should never comment on any evidence. *See Davis v. State*, 313 S.W.3d 317, 330 (Tex. Crim. App. 2010) (any instruction suggesting that intoxication can be a defense to a crime would be improper and would constitute a comment on the weight of the evidence); *Solomon v. State*, 49 S.W.3d 356, 368 (Tex. Crim. App. 2001) (because "independent impulse" defensive instruction would simply negate the conspiracy liability element of the State's case, inclusion would be a comment on the weight of the evidence); *Giesberg v. State*, 984 S.W.2d 245, 250 (Tex. Crim. App. 1998) (same for alibi instruction).

**Fourth:** In death penalty cases, while specific mitigation instructions may not be required, if a defendant receives an instruction on temporary insanity due to intoxication, it could present the problem of allowing the use of any mitigation evidence only if the jury finds it rises to the level of temporary insanity. *See Tucker v. State*, 771 S.W.2d 523, 534 (Tex. Crim. App. 1988).

Thus, when these factors are added to the determination of whether the trial court is required to give the instruction in a particular case, based on the evidence that has

---

designated for publication); *Herrera v. State*, No. 01-12-00548-CR, 2013 Tex. App. LEXIS 4824 (Tex. App. Houston 1st Dist. Apr. 18, 2013, no pet.) (not designated for publication).

already been admitted and is before the jury, it makes the decision process more difficult.  As in all defensive or mitigation type instruction cases, we encourage the trial court to give the instruction in close cases rather than jeopardize the time and efforts of everyone and risk a reversal because an appellate court may determine the evidence raised the defensive or mitigation issue.

Nevertheless, in cases such as this, when the instruction is requested and not given, we must determine whether the trial court erred.  *See Middleton v. State*, 125 S.W.3d 450, 453 (Tex. Crim. App. 2003).

We have found very few cases which hold the trial court should have instructed the jury on this mitigation issue, and Arabie points us to no others.[6]

In one case, the court of appeals held that the defendant's testimony that the cocaine he had taken at the time of the offense made things seem unreal, that he did not know what he was doing, and that he did not realize what was happening was sufficient to entitle him to an instruction on voluntary intoxication at the punishment stage of his trial.  *Frias v. State*, 775 S.W.2d 871, 873 (Tex. App.—Fort Worth 1989, no pet).  The court reasoned that "Although he did not specifically testify that he did not

[6] On the other hand, there are plenty of cases which point out what evidence does not require the mitigation issue.  *See e.g. Cordova v. State*, 733 S.W.2d 175, 190 (Tex. Crim. App. 1987) (where one presents evidence that he was intoxicated or "crazy drunk" when he committed the crime does not automatically mean that when the individual committed the crime he was then temporarily insane by reason of intoxication); *Bean v. State*, No. 02-05-00353-CR, 2006 Tex. App. LEXIS 9060 (Tex. App.—Ft. Worth Oct. 19, 2006, pet. ref'd) (not designated for publication) (defendant's testimony that he was high and dazed and was not thinking clearly did not establish that he did not know his conduct was wrong); *Lee v. State*, 874 S.W.2d 220, 224 (Tex. App. Houston 1st Dist. 1994, pet. ref'd) (complainant's testimony that appellant was "totally in a rage, like a person out of his mind," was insufficient to require a jury instruction on temporary insanity caused by voluntary intoxication).

know that what he was doing was wrong, if he were so intoxicated that the situation seemed unreal, and if he were so intoxicated that he did not know what he was doing or realize what was happening, it follows that he was so intoxicated as to not know that his conduct was wrong because he could not have known that his conduct was wrong if he did not know what his conduct was." *Id*. The court went on to hold, however, that the trial court's failure to submit the mitigation issue was harmless. *Id*. at 873-874.

In *Harvey v. State*, the appellant testified that he did not know that his conduct was wrong as a result of his intoxication at the time he committed the offense. *Harvey v. State*, 798 S.W.2d 373, 375 (Tex. App.—Beaumont 1990, no pet.). The Beaumont Court of Appeals held that this was sufficient to require the submission of the appellant's requested instruction on mitigation of punishment due to temporary insanity caused by intoxication. *Id*. The court held, however, that the trial court's error was harmless.

In *Perez v. State*, the Court of Criminal Appeals, in holding that the instruction presented to the trial court relative to temporary insanity was an incorrect statement of the law, noted that "the testimony relative to temporary insanity is very meager indeed, and barely, if at all, calls for an instruction thereon. *Perez v. State*, 172 S.W.2d 314, 315 (Tex. Crim. App. 1943) (op'n on rhg). The testimony relative to the instruction came from the defendant's wife who said, "'I think this drinking on my husband's part has had the effect of interfering with his ability to tell right from wrong; he never gets in any trouble unless he is drinking like that. I think he is mentally affected only when he

is drinking like that, he gets like that in trouble and they pick him up. He has never been treated for it.'" *Id*.

*Evidence*

Arabie points to the following testimony as evidence of his temporary insanity by intoxication which he argues would require the requested instruction to be included in the charge. Arabie told police he was an alcoholic and admitted to drinking alcohol. He claimed he was walking to a convenience store to get more beer when he was detained. One officer thought this story did not make sense because Arabie had passed other stores on his way to a store that was closed. Another officer thought Arabie had been drinking "a bunch." Arabie showed some effects of alcohol–he smelled like it and slurred his speech a little bit. An open can of a "Four Loko" malt beverage was found inside Arabie's car. The officer testified that he was aware that Four Loko was advertised as "an extremely high alcohol, highly caffeinated malt beverage" that is fruit flavored. He placed the alcohol content of Four Loko as more than beer and a little less than wine. He stated that the alcohol content of hard liquor was much higher. There was testimony that Arabie's demeanor would change from being talkative to not talkative and to being belligerent to the extent of wanting to be just taken away.

The closest Arabie's evidence may be to raising the issue is the following exchange between Arabie's trial counsel and the officer who first encountered Arabie.

Q: I seem to recollect he kept insisting he didn't know these two girls.[7]

A: Yes.

Q: Did he seem confused about why he was under arrest?

A: Um, in that aspect, yes, he was concerned about the girls.

Q: Yeah, he kept talking about there's two girls over there, I don't know those girls, or something along those lines; is that right?

A: Yes.

Q: And he went on and on for about 15 minutes, or 20 minutes maybe?

A: Yes, sir.

Q: Were you ever able to figure out what – what he was talking about?

A: Uh, in regards to two girls?

Q: Yes.

A: Two girls had approached us. They – they saw a bunch of lights and police cars parked up the street and I think they were just concerned citizens. I didn't really talk to them.

Q: Did he make some sort of statements to you like, I'm gonna be a rapist, you're gonna say I'm a rapist or something like that?

A: I don't remember that specifically, sir.

But when this testimony is reviewed in the context of the events of the night, it appears to be a mere effort to deflect attention from the murder and an effort by Arabie to confuse the officers.

---

[7] This is the first time the "two girls" incident is mentioned at trial.

Further, when this officer first encountered Arabie within minutes of the offense, Arabie was walking away from the scene toward the front of the building of a local business. He would not stop, even saying "no," when the officer ordered him to stop. Arabie then turned from the officer, grabbing at the side of his waist as if trying to retrieve a weapon. He disappeared behind the building and other officers at the scene heard a thud, as if something was being thrown on the ground. Arabie reappeared from behind the building with his hands up and submitting to the officer who first encountered him. A gun was located in the area to which Arabie had retreated. This action tends to show that Arabie knew what he was doing. *Graham v. State*, 566 S.W.2d 941, 951 (Tex. Crim. App. 1978) (attempts to conceal incriminating evidence and to elude officers can indicate knowledge of wrongful conduct).

*Application*

Although there was evidence that Arabie had been drinking and showed signs of intoxication, possibly even to the point of being confused, there was no evidence that Arabie's intoxication caused him to not know his conduct in murdering Sanders was wrong. We do not find that the evidence of his varying demeanor or his ongoing concern that he would be accused of rape was evidence of this element of the mitigation issue. Accordingly, the trial court did not err in denying Arabie's requested punishment instruction.

**CONCLUSION**

Arabie's sole issue is overruled, and the trial court's judgment is affirmed.


TOM GRAY
Chief Justice

Before Chief Justice Gray,
     Justice Davis, and
     Justice Scoggins
     (Justice Davis concurs without an opinion)
Affirmed
Opinion delivered and filed October 17, 2013
Publish
[CRPM]